William W. PARSONS

v.

STATE of Indiana.

No. 782S262.

Supreme Court of Indiana.

Jan. 15, 1985.

Ralph Ogden, Denver, Colo., for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Rape, a class A felony, Ind.Code § 35–42–4–1 (Burns 1979) and was sentenced to thirty (30) years imprisonment. His direct appeal presents two issues for our review:

(1) Whether the trial court erred in denying Defendant's motion to discharge the jury panel; said motion was predicated upon his claim that certain remarks by the prosecuting attorney made during *voir dire* examination constituted an impermissible comment on the anticipated failure of the Defendant to testify;

(2) Whether the trial court erred in admitting evidence that the victim identified the Defendant as her assailant.

The record discloses that on September 22, 1981, the Defendant raped B.R., a seventeen year old girl.

### ISSUE I

During *voir dire* examination, the Prosecutor pointed out to a prospective juror that in a rape case there are usually only two eyewitnesses to the rape itself. He then asked if it would bother her if one of the two people involved in a rape did not testify. Defense counsel objected and moved for a mistrial or, in the alternative, discharge of the venire. The trial court denied both motions but immediately gave the following admonition to the jury panel:

"Ladies and gentlemen I'm going to instruct all of you to disregard the last few comments by Mr. Hamilton regarding certain testimony. A correct statement of the law as far as you're concerned at this point is that the State of Indiana has the burden of proving the defendant's guilt beyond a reasonable doubt. The defendant is under no obligation to present any evidence whatsoever. He

does not have to prove or explain anything."

Defendant argues that the Prosecutor's statement was an "impermissible adverse comment upon the defendant's anticipated failure to testify" and that the admonition only "reinforced the prosecutor's suggestion that a person who could refute the victim's testimony would not remain silent."

Any comment which is subject to interpretation as a comment upon an accused's failure to testify is impermissible. *Griffin v. California,* (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *Mayes v. State,* (1984) Ind., 467 N.E.2d 1189, 1196, and cases cited therein. The reason for imposing such restriction is to shelter the defendant from being penalized for exercising his constitutional privilege not to testify. *Griffin v. California,* 380 U.S. at 614, 85 S.Ct. at 1232–1233, 14 L.Ed.2d at 109–110. Any comment which may be interpreted as implying that the defendant must be guilty or he would have testified cannot be condoned. The Prosecutor's comment in the case at bar, however, was directed to a prospective juror during *voir dire* examination. The comment does not suggest that the Defendant should testify if he is innocent or reinforce any proclivities the jurors may already have regarding any failure of the Defendant to testify. Rather, the Prosecutor's question seeks a response which will aid him in determining the thought processes, biases, and prejudices of the prospective juror. We cannot accept Defendant's assertion that such comment was a prejudicial statement on his failure to testify.

Moreover, assuming, *arguendo,* that the comment was improper and prejudicial, the prompt admonition by the trial court was, in this case, sufficient to cure the harm, if any. *See Clark v. State,* (1978) 269 Ind. 316, 323, 380 N.E.2d 550, 554; *Moore v. State,* (1977) 267 Ind. 270, 276, 369 N.E.2d 628, 631; *Jones v. State,* (1973) 155 Ind. App. 536, 544, 293 N.E.2d 545, 549; *see*

*also Williams v. State,* (1982) 426 N.E.2d 662, 666.

## ISSUE II

■ Following a hearing on Defendant's motion to suppress all identification evidence, the motion was denied. Defendant assigns as reversible error the trial court's admission, over his timely objection, of evidence of the victim's pre-trial identification of him as her assailant and of her in-court identification of him, arguing that the pre-trial identification procedures were unduly suggestive and that B.R. did not have an independent basis for making the identification.

Testimony at the hearing on the motion to suppress and at trial revealed that shortly after she had been raped, B.R. looked through albums of photographs at the police station in an attempt to identify her assailant. She viewed approximately 75–100 photographs but did not identify anyone. Defendant's picture had not appeared in the albums. At about 11:00 p.m. the following evening, after the police dispatcher had called her home and had told her that the police had a suspect, B.R. arrived at the police station with her parents. They were taken into a small room, and shortly thereafter Detective Clark brought into the room a photographic display consisting of six photographs, five of which B.R. had rejected the previous evening and one of the Defendant. Clark placed the photographs in front of B.R. and told her to take her time and to pick a photograph only if she was absolutely certain that the person pictured was her assailant. He further told her that if her assailant was not pictured she was not to select anyone. After he told her not to say anything until he asked her to, he backed away from her; whereupon, B.R. chose the Defendant's photograph and said that she was "definitely sure" that he was her attacker.

Defendant claims that the array was impermissibly suggestive in that his picture "stands out like a sore thumb." The array appears in the record and consists of six numbered photographs of young white men with brown shoulder length hair and small to medium body builds. Three of the men pictured, including the Defendant, bear a striking resemblance to each other. The Defendant's picture is somewhat overexposed, but it is not significantly lighter than the other photographs. His picture is also somewhat more of a "close-up shot," although only slightly more so than photograph number 1. The photographs are arranged in two rows of three pictures each with the Defendant's picture appearing in the middle of the second row. Three of the pictures bear yellow slips of paper covering placards containing police information. We do not agree with the Defendant that his picture "stands out like a sore thumb." Neither do we think that the characteristics of the display, singly or in combination, render the display unduly suggestive. Moreover, Detective Clark neither did nor said anything which suggested that the suspect's photograph was in the display or that B.R. should choose the Defendant's photograph.

Following the victim's identification of the Defendant from the photo array, Detective Clark told her to look through a one-way mirror; she observed the Defendant sitting with three police officers and again identified him. The State concedes that this confrontation was improper. *See Head v. State,* (1982) Ind., 443 N.E.2d 44, 56. Even though this part of the pre-trial identification procedure was unduly suggestive, an in-court identification is, nonetheless, admissible when the State can "'establish by clear and convincing evidence that the in-court identifications [are] based upon observations' gained independently of any unduly suggestive pre-trial confrontations." *Harris v. State,* (1980) 273 Ind. 60, 62, 403 N.E.2d 327, 329.

In the case at bar, B.R. testified that she was with her assailant for approximately forty-five (45) minutes and that during that time she had "a lot" of opportunities to see him in that the surrounding area contained several security and street lights. She stated that although she and her attacker were never directly beneath a light, there

was sufficient light for her to see his face clearly. When asked what she could recall as far as his facial characteristics were concerned she responded, "Everything ... his chin, nose and everything." She further testified that she knew the Defendant had been her attacker "[b]ecause I remember him from that night." Moreover, she had been able to describe her attacker's clothing, a chain which he wore at his right side, and the distinctive odor of his jacket. Items taken from the Defendant matched the descriptions she had given and were identified by her as having been worn by her attacker. Defendant asserts that B.R.'s failure to detail specific facial features, the kind of shoes worn by her attacker, and a specific design on the jacket render her positive identification of the Defendant, absent the unduly suggestive pretrial identification procedures, unlikely. We do not agree. B.R. had a sufficient independent basis for her in-court identification.

Although the evidence of the pre-trial identification which resulted from the viewing of the Defendant through the one-way mirror should not have been admitted into evidence, we find that its admission was harmless beyond a reasonable doubt in light of B.R.'s prior selection of the Defendant from the properly conducted photographic lineup and the fact that she had an adequate independent basis for her in-court identification. *See Head v. State*, (1982) Ind., 443 N.E.2d 44, 57.

In *Head v. State*, a case involving similar circumstances, this Court observed:

> "Although the pretrial confrontation occurred by virtue of unnecessary and improper procedures, that identification had been preceded by a properly obtained photographic identification. In light of these various circumstances, including the ample opportunity which Koger had to view the perpetrator, we conclude that his in-court identification was based on observations gained independently of the suggestive pretrial confrontation. (citations omitted)
> \* \* \* \* \* \*

> "Inasmuch as the photographic identification and in-court identification were properly admitted and were unequivocal in nature, we conclude that the admission of the pretrial identification obtained via the confrontation, although improper, was harmless beyond a reasonable doubt. *Chapman v. California*, (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Tewell v. State*, (1976) 264 Ind. 88, 339 N.E.2d 792; *Owens v. State*, (1975) 263 Ind. 487, 333 N.E.2d 745; *Eckman v. State*, (1979) Ind.App., 386 N.E.2d 956."

*Id.*

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.