**Robert L. HALE, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 82S00–8712–CR–1150.**

Supreme Court of Indiana.

Nov. 27, 1989.

242

Dennis Brinkmeyer, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of sixty (60) years.

The facts are: Nancy Roach, the victim in this case, was recently divorced from David Smitha and had been dating appellant. On the afternoon and evening of April 23, 1986, the victim and appellant appeared to be having a series of arguments.

The next-door neighbor, Joanna Hohimer, heard some shouting, heard the victim tell appellant to leave her son Jerhord alone, and heard appellant leave and return. Shortly thereafter, the victim's son, five-year-old Jerhord, appeared at Mrs. Hohimer's back door. He obviously was upset and appeared to have been crying. She asked him what was wrong and he said, "I don't want to be over there with Bob anymore." Upon further inquiry, he stated, "Bob used to be nice, but he hurt me." Mrs. Hohimer allowed the child to come in and play with her six-year-old daughter.

Mrs. Hohimer again heard appellant shouting outside the victim's home, and then he appeared at her back door and asked if Jerhord was there. She testified that appellant was acting normal and was speaking in a normal tone of voice. She told him that Jerhord was there, and when appellant asked to talk with him, she left her back door locked but stated that she would get the child. Appellant then asked her if the child was hiding from him and she stated, "No, they are just in there playing," to which appellant replied, "Well never mind," and left.

Appellant drove away but returned shortly to the victim's house. His conduct was repeated. After appellant returned and left for the third time, Mrs. Hohimer took Jerhord back to his house and found the victim lying across the bed. An autopsy later revealed that the victim had died of a broken neck.

Appellant claims the trial court erred in admitting in evidence autopsy photographs of the victim because the cause of death and the identity of the perpetrator were never at issue. At the time the photographs were admitted, no objection was made on that basis and appellant cites no authority in his brief to support his contentions. Further, an examination of the photographs and the testimony of the physician conducting the autopsy discloses that the photographs were admitted in order to help the jury understand the testimony of the doctor. We see no error in the admission of the photographs.

Appellant claims reversible error occurred during the cross-examination of appellant's father concerning the hiring of a psychologist, Dr. Clare, to examine appellant. During the cross-examination, the prosecutor asked appellant's father why he had hired a psychologist and who had advised him to do so.

Appellant takes the position that this was tantamount to attacking Dr. Clare's credibility prior to his testimony. He also claims that the prosecutor was guilty of misconduct during the cross-examination of Dr. Clare. During cross-examination, the prosecutor attempted to question Dr. Clare concerning his testimony in a prior murder trial not involving appellant.

In examining allegations of misconduct, this Court will examine the record to determine the probable persuasive effect

the conduct may have had on the jury's decision. *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied,* 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. The bias, prejudice, or ulterior motives of a witness may properly be introduced as relevant to the issues of credibility and the weight to be given to a witness' testimony. *Sweet v. State* (1986), Ind., 498 N.E.2d 924. In the case at bar, it was proper for the prosecutor to question appellant's father concerning the hiring of Dr. Clare.

■ When the prosecutor attempted to cross-examine Dr. Clare from the transcript of a previous murder trial, the trial court sustained appellant's objection. The only testimony allowed was that Dr. Clare in fact did testify in a prior trial and to the effect that the defendant in that trial was insane. Under the authority of the above-cited cases, this type of cross-examination is permissible.

Appellant also contends the prosecutor was guilty of misconduct in his summation to the jury when he alluded to Mrs. Hohimer's testimony concerning appellant's actions and the fact that the victim's son, Jerhord, had come to her home. The prosecutor then suggested that appellant had already killed the victim and that he was asking Mrs. Hohimer to turn Jerhord over to him so that he might kill him too.

■ Appellant takes the position that there was no evidence to support such a comment by the prosecutor. It is proper, however, for a prosecuting attorney to comment on the evidence presented to the jury and to draw logical conclusions from such evidence as long as he does not imply personal independent knowledge concerning the evidence. Such comment thus was permissible. *Brumfield v. State* (1982), Ind., 442 N.E.2d 973; *Barnes v. State* (1982), Ind., 435 N.E.2d 235.

■ Appellant claims the evidence is insufficient to support the verdict. Appellant takes the position that the overwhelming weight of the evidence is that he was insane at the time the victim was killed and that the State failed in its responsibility to prove that he in fact had the comprehension required to form the *mens rea* to commit murder. There is no question that the evidence in this case is undisputed that appellant was suffering from a mental illness at the time the victim was killed. This was established by the lay witnesses and the doctors who testified. This issue was placed before the jury by the doctors who had examined appellant.

An examination of the testimony of psychiatrist William E. Yee explains clearly the situation he found in examining appellant. He stated that at the time of his examination, he diagnosed appellant as suffering from Ganser's Syndrome. He explained that although appellant suffered from mental illness, he did have the capacity to distinguish right from wrong and that he responded logically to questions concerning his past and present conduct. He explained that Ganser's Syndrome is found in people who are mentally ill, but when placed under the stress of confinement, either consciously or unconsciously enter into conduct calculated to lead the examiner to the conclusion that they are insane. He placed it in the context of the "mentally ill pretending to be mentally ill."

Mental illness is not a defense to criminal conduct. *Truman v. State* (1985), Ind., 481 N.E.2d 1089. This was recognized by the Indiana Legislature when it enacted Ind. Code § 35–36–2–5, which provides that a person may be found guilty but mentally ill. In order for a jury to find a person not guilty by reason of insanity, they must find that the defendant, at the time of the offense, was suffering from "a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct." Ind.Code § 35–41–3–6(b).

■ This Court will not substitute its judgment for that of the jury when there is evidence to support the jury's verdict. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. We will reverse the finding as to sanity made in the lower court only where the evidence leads, without conflict, to a con-

clusion opposite that reached by the trier of fact. *Campbell v. State* (1989), Ind., ·536 N.E.2d 285. The evidence in this case supports the jury's verdict that appellant was guilty of murder notwithstanding his mental illness.

 Appellant contends the trial court erred in refusing to admit his Tendered Exhibit A, which was a letter taken from the victim's purse that had been written by her to appellant. Appellant tendered the exhibit on the ground that it would show the victim's belief that appellant was insane. The State objected on the ground that the letter was hearsay and that there would be no opportunity to cross-examine the writer. Appellant claims the letter was offered not to prove the truth of its contents but for the purpose of showing that the victim herself had reason to believe that appellant suffered from a gross change in behavior that suggested mental illness.

Appellant's contention itself concerning the letter clearly demonstrates, however, that it in fact was being offered as proof that appellant was insane. The letter thus was inadmissible as hearsay evidence. *Taylor v. State* (1986), Ind., 496 N.E.2d 561; *Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860; *Wagner v. State* (1985), Ind., 474 N.E.2d 476; *Grimes v. State* (1983), Ind., 450 N.E.2d 512. The trial court did not err in refusing to admit the letter in evidence.

Appellant claims the trial court erred in refusing his Tendered Final Instruction No. 8. The instruction purported to instruct the jury concerning specific intent and the requirements of proof thereof. It is not error for a trial judge to refuse an instruction which is covered by other instructions which are given. *Eddy v. State* (1986), Ind., 496 N.E.2d 24. The trial court is not obliged to give an instruction simply because it is a correct statement of the law. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228.

Here, the subject matter of appellant's Tendered Instruction No. 8 was adequately covered by the court's Instructions Nos. 4, 5, and 13 which were given to the jury. Therefore, it was not error to refuse to give the tendered instruction.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.