Keith B. SWAIN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A04–9312–CR–487.

Court of Appeals of Indiana,
Fourth District.

Feb. 28, 1995.

Transfer Denied May 3, 1995.

William D. McCarty, Anderson, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant-defendant, Keith B. Swain (Swain), appeals his conviction of possession of cocaine, a class D felony[1].

We reverse.

*ISSUES*

One issue is dispositive of this appeal: Whether evidence of Swain's prior convictions was improperly admitted at trial.

*FACTS AND PROCEDURAL HISTORY*

On June 1, 1993, Officer Steven Stoops of the Anderson Police Department (Officer Stoops) was conducting surveillance to interdict street drug traffic at the corner of 16th Street and Arrow Avenue in Anderson. Officer Stoops had been assigned to a special anti-street crime shift stationed predominately in problem areas for drug activity.

At about 9:30 that night, Officer Stoops arrived at the intersection of 16th and Arrow and observed Swain on the southeast corner of the intersection. Swain was running up to cars and conversing with occupants. Swain waved down a vehicle, and another car pulled up behind. Swain ran between the cars for a short time. Officer Stoops overheard Swain talk about "twenties." Officer Stoops, knowing that "twenties" is a street pricing term for a quantity of crack cocaine, called for backup.

When one of the vehicles was about to leave, Officer Stoops approached Swain and identified himself as a police officer. Officer Stoops directed Swain to get down on the

1.  IND.CODE 35–48–4–6

ground, which he did. As Swain was getting down, Officer Stoops saw his right hand move to the outside and then saw an item hit the ground. The item recovered was a container of crack cocaine. Officer Stoops questioned the occupants of the car who stated that Swain had tried to sell the packet to them.

## DISCUSSION AND DECISION

■ Swain argues that evidence of his four prior convictions was improperly admitted at trial. We agree.

The admission of evidence of crimes or other bad acts is governed by Indiana Rule of Evidence 404(b)[2], which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, ....

The general rule stated in the first sentence of Rule 404(b) is, to a great extent, the same as under earlier Indiana law, and prior Indiana law and Rule 404(b) each respond to the concern that the trier of fact will convict the defendant for what he is, rather than what he has done. 12 MILLER, INDIANA EVIDENCE, (1994 Supplement), Sec. 404.200 at 187.

In *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 128, our supreme court stated the reasons for the rule:

If a court were to indiscriminately admit proof of criminal activity beyond that specifically charged, then the burden on the defense would be intolerably enlarged and the court would effectively negate the due process presumption of innocence that our system of justice accords to every accused.

■ However, Ind.Evid.R. 404(b) generally admits evidence of prior bad acts, unless such evidence is used for the sole purpose of suggesting the "forbidden inference," i.e. that

the defendant is of bad character and that he acted in conformity with that character by committing the charged crime. *Id.* at 129.

At trial, evidence was admitted that Swain had previously been convicted of four counts of dealing in cocaine. Swain attempted to show that Officer Stoops was prejudiced against blacks, and that his presence at 16th and Arrow on the night of the arrest was solely based on that prejudice. The trial court warned the defense that while the defense was proper, it did risk opening the door to rebuttal involving the actual reasons the police were watching the scene and the defendant. The judge allowed the officer to testify about defendant's prior convictions "to explain the officer's conduct and his presence in the area ...," and not "to prove or show that Mr. Swain is guilty of these offenses merely because some unnamed people have accused him of being guilty." (R. 479).

The evidence was admitted simply to show why Officer Stoops was at 16th and Arrow on the night of June 1, 1993. This had already been explained by Officer Stoops in his direct examination:

Q.  ... And specifically on June 1, 1993, you were in the area of 16th and Arrow Avenue. Correct?

A.  Yes, Sir.

Q.  Was that an assignment for you that night to be in that area?

A.  Yes, Sir.

Q.  Okay. And that area was designated as a problem area?

A.  Yes, Sir.

\*      \*      \*      \*      \*      \*

Q.  Alright. Can you tell us the purpose of you being in that area?

A.  Conducting surveillance. Uh, trying to interdict street drug traffic.

\*      \*      \*      \*      \*      \*

Q.  Okay. You said you're familiar with this area. You said it's a problem area.

A.  Um hum.

Q.  ... The area is a problem for what?

---

**2.** At the time of Swain's trial, the admissibility of such evidence was governed by Federal Rule of Evidence 404(b) as had been adopted by our supreme court in *Lannan v. State* (1992), Ind.,

600 N.E.2d 1334. On January 1, 1994, the supreme court adopted F.R.E. 404(b) as Indiana Rule of Evidence 404(b). We will refer to it as such.

A. The area is a problem for street violence, um, crack street, crack cocaine dealing....

(R. 107–127).

The State's argument that the evidence was not being offered on the question of defendant's guilt but to show why the police took certain actions must fail. First, this testimony must be examined as to its relevancy. Clearly, relevancy is central to admissibility. Ind.Evid.R. 401 says:

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

If relevant evidence goes to prove an essential element of the charge against the defendant, this type of evidence fails completely. Why the police acted in a certain manner does not in any way prove that the defendant committed a certain crime. Explaining the reasons for the officer's conduct or his presence at the scene is not material to proving the elements of the crime charged. The evidence admitted against the defendant was not part of the res gestae of the charged offense and was not necessary to explain misleading testimony or evidence offered by defendant's counsel.

Even if the evidence was relevant, it still would not be admissible. The Indiana Rules of Evidence also contain Rule 403 which permits the trial court discretion to exclude relevant evidence if its prejudicial impact outweighs its probative value. The prejudice of a police officer testifying about the defendant's prior drug sales substantially outweighs the probative value of a police officer explaining the next investigatory step he took. This evidence fails to survive an Ind. Evid.R. 403 evaluation. There is no legal need or requirement for the jury to know of the reasons for the officer's conduct. Thus, the probative value of this evidence is naught and the prejudicial impact outweighs its probative value.

The blanket theory of admissibility of explaining police conduct should fail with a relevancy review under Ind.Evid.R. 401 and an undue prejudice consideration under Ind. Evid.R. 403.

We reverse.

DARDEN, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. The evidence of the four prior convictions was properly admitted to rebut the inference raised by the defense that the interest of the Anderson Police Department in surveying the location of 16th and Arrow and specifically Keith Swain was merely that of racial animus. The following excerpts of the transcript show how the evidence came to be admitted. During the cross-examination of Officer Stoops, defense counsel asked:

Mr. Oliver: How many blacks have you busted for crack cocaine?

A. Probably under ten (10). Myself personally. That I have charged.

\* \* \* \* \* \*

Q. How many whites have you arrested for crack cocaine, Officer?

A. None.

Q: Only blacks. Officer, tell this jury and tell me and tell the court. Are blacks the only ones who do crack cocaine?

A. No, Sir.

\* \* \* \* \* \*

Q. Black people pay taxes too don't they?

A. Yes, Sir.

\* \* \* \* \* \*

Q. And taxes are used to pay your salary, aren't they?

Mr. Garman: And Judge, I'm gonna object....

The Court: Objection sustained.

Q. Why do you persist in singling out only the black part of town ...

Mr. Garman: Judge, I'm going to object.

\* \* \* \* \* \*

The Court: Objection sustained.

Q. Well, can you tell us why you don't have surveillance at Wertz's place?

A. Sir, the problem is street level dealing of crack cocaine. It's not prominent there. . . .

Record pp. 176–191.

Outside the presence of the jury, the following exchange took place:

The Court: . . . Mr. Garman, you have matters to bring to my attention.

\*   \*   \*   \*   \*   \*

Mr. Garman: Yes, Judge. Based upon the officers cross-examination by Mr. Oliver, I feel that Mr. Oliver has created such an impression in the juror's mind that the defendant is more or less a victim of circumstances. He was there because he's a victim of circumstances. 'Cause he's a black gentleman. He had a right to be on the street. He was doing nothing but selling a watch. More or less putting character evidence in through this witness. Therefore, I think the State has the opportunity to introduce evidence as to the defendant, uh, prior conviction for I think it's at least four (4) counts of Dealing in Cocaine, Class B Felonies, which I believe were also incurred in the same area. . . .

\*   \*   \*   \*   \*   \*

The Court: Motion to Advance Determination of State's Request to Present Defendant's Prior Criminal History. Well, I'll tell you something. I think we are so close to being . . . to being there that, uh, it would take one more straw to break the camel's back. And I cautioned and warned you, but I'm not gonna . . . I'm not gonna rule right now that Mr. Swain's prior record can come in. But I need to say that there is such a thing . . . I'm always hammered with this cumulative judicial misconduct. Well, one little remark, one little grimace. Well, add it all up it means for an unfair trial and the same thing goes for you guys. Uh, each of these maybe individually don't mean anything, but you add it up and you're trying to paint the picture that all these people are out to get Keith Swain because he is a black man. And I don't think that's got anything to do with it. Keith Swain is on probation for dealing

dope for Pete's sake. But I'm not going to tell the jury about it unless you keep it up Mr. Oliver. I believe you're on the ragged edge. . . .

\*   \*   \*   \*   \*   \*

Mr. Oliver: The racial divisions in America are something I didn't create. My client was asked . . . He didn't ask to be born black. He didn't asked [sic] to be discriminated against. He is entitled to a defense and that's what we're dealing with here. If that is his defense, that's is [sic] his defense.

\*   \*   \*   \*   \*   \*

The Court: I'm just cautioning you please use caution and . . . and . . . and please just be careful with this hyperbole. You've just got to be cautious because that's what we're dealing with.

Record pp. 227–245.

Later, the prosecution called Officer Sieg to the stand. Officer Sieg's testimony was necessitated by the defense's objection, during Officer Stoops' testimony, as to why Officer Stoops was at 16th and Arrow on June 1, 1993. When Officer Stoops tried to testify that the outgoing shift had told him to look out for Swain dealing cocaine at this location, the defense interposed a hearsay objection which was sustained. Officer Sieg was then called to the stand and testified that during roll call on June 1, 1993, he had told the entire incoming shift, which included Officer Stoops, to watch for Swain because the department had information that Swain was dealing cocaine at 16th and Arrow. On cross-examination, the defense questioned Officer Sieg as follows:

Q. . . . Officer, you like your job, don't you?

A. Yes, Sir.

Q. And in your job you usually work around the west side. Am I right?

A. For the past four (4) years I have been assigned to the west side. Yes, Sir.

Q. Four (4) years. West side. Predominately black. Am I right, Officer?

A. Yes, Sir.

Q. But you don't like black people, do you Officer?

A. I wouldn't say that is a true statement. No, Sir.

Q. You would not say that that's a true statement. Well, Officer tell me then, why do you refer to black people as niggers?

[Prosecution's objection sustained]

Q. Officer, why do you make black people take down their pants in the middle of the road?

A. I don't make people take their pants [down] in the middle of the road.

Q. So on the side of the road.

A. I think what you're referring to, Sir, is a ...

Q. You've done it. That's my question. You've done it.

    \*     \*     \*     \*     \*     \*

A. ... [I]f we see somebody who is dealing drugs or we believe is dealing drugs or we got information about who is doing drugs, we'll stop and talk to them. Never once have we searched anybody or personally have I ever searched anybody who didn't give permission to search. Our usual course of action would be to stop ... stop an individual, ask them for I.D. Once they give us their I.D. to explain to them why I'm there. What's going on in that area and ask if they have any guns or drugs on their person. Normally they'll say ... ninety-nine percent (99%) of the time whether they have drugs or not, they'll say, "No, I don't have any drugs on my person. Go ahead and search." So then I have them pull their pants down. Now if they have two (2) pairs of pants on, which is kind of the style to wear a pair of pants, a pair of shorts and then a pair of sweats over them. They're kind of sagged down or else maybe two (2) pairs of jeans. That's what Mr. Oliver is speaking about as far as taking their pants down. I've never had anybody take their pants down and just their drawers, their underwear in the middle of the street. Some people think that happens, but it just doesn't happen. . . .

Record pp. 504–512.

On redirect examination, Officer Sieg testified:

Mr. Garman: Officer, you previously related that, uh, that you had told the officers at roll call certain information pertaining to the defendant. Correct?

A. Yes, Sir.

Mr. Oliver: Judge, I object. Beyond the scope. I didn't talk about that one bit. I talked merely about ...

Mr. Garman: Prejudice.

Mr. Oliver: Whether he was prejudice or bias. That's all I talked about.

Q. And are you prejudice against the defendant because he's a black gentleman?

A. No, Sir.

Q. You have an interest in the defendant, Keith B. Swain, for other reasons. Correct?

A. Correct.

Q. You have an interest in Keith B. Swain because you are aware of his prior criminal history. Correct?

A. Correct.

Mr. Oliver: Judge, at this particular time, I would like to object. . . .

Mr. Garman: Judge, there's been multiple times that Mr. Oliver has attempted to question every officer's intent and actions in the district that they work. And especially Mr. Oliver has thoroughly tried to embarrass Officer Sieg as to his duties and responsibilities in that area. Officer Sieg is able to relate to the jury the reason why he has an interest in the area and the defendant in this matter and the reasons why he is an important person to the officer. . . .

The Court: Objection's overruled. You may proceed, Mr. Garman.

Mr. Garman: Thank you, Judge.

Q. Sir, you are aware of the defendant's criminal history. Is that correct?

Mr. Oliver: Judge, we move for a mistrial.

The Court: Your motion is denied.

A. That is correct.

Q. Are you aware that on ... are you aware that on the 26th day of June, 1991, the defendant plead guilty to four (4) counts of dealing in cocaine, all Class B. Felonies?

A. Yes, I am quite aware of that.

Q. And do you know what area these, uh, ...

Mr. Oliver: Judge, we object again....

The Court: Objection's overruled. Mr. Garman.

Q. The area that these charges arose out of in Anderson?

A. The area of the west side. 16th and Arrow.

Record pp. 517–526.

A review of the entire record leads me to conclude that the evidence of Swain's prior convictions was properly admitted. Defense counsel appears to have had two strategies. One was to defend Swain by attacking the police officers' motives. The second was to force the admission of an explanation, knowing that it was not otherwise admissible, as to why the officers were looking for Swain. After cautioning from the court, defense counsel persisted in the line of questioning that produced the results of which he now complains. The evidence was properly admitted to rebut the inference raised by the defense that the officers' only interest in surveying and arresting Swain was because of his race. If Swain had been improperly stopped or arrested, counsel could have filed a motion to suppress the tainted evidence. In this case, the defendant is being rewarded for his refusal to use remedies that would have protected his rights without prejudicing a jury. The result here is unfair to everyone: the jurors, the law abiding citizens who live in the area of the arrest, and the people who work in the justice system.

Lastly, I disagree with the majority's statements regarding relevancy. The majority suggests that evidence is relevant only if it goes to prove an element of the crime. This clearly is not the law. Evidence is relevant if it has the tendency to make the existence of a *"fact that is of consequence* to the determination of the action more or less

probable." Ind.Evid.R. 401. (emphasis added). The evidence admitted here was relevant in that it was useful to determine if the officers' conduct stemmed from legitimate investigatory motives or from prejudicial feelings. *See Morgan v. State* (1981) 425 N.E.2d 625 (relevant evidence includes evidence which tends to substantiate the credibility of a prosecuting witness).

I would affirm the conviction.