**Daniel R. POTTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 57A04–9504–CR–140.

Court of Appeals of Indiana.

May 29, 1996.

Transfer Granted Aug. 6, 1996.

Susan K. Carpenter, Public Defender, Gregory L. Lewis, Deputy Public Defender, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Daniel R. Potter appeals his convictions of rape,[1] a class A felony; confinement,[2] a class B felony; intimidation,[3] a class C felony; and battery,[4] a class A misdemeanor, as well as his adjudication as a habitual offender.[5]

We affirm in part, and reverse and remand in part.

### ISSUES

Potter presents three issues for our review, but we find only one to be dispositive: whether Potter received effective assistance of counsel.

### FACTS AND PROCEDURAL HISTORY[6]

On April 2, 1994, Potter parked his car and walked to the trailer of his estranged

---

1. *See* IND.CODE 35–42–4–1 (1993).

2. *See* I.C. 35–42–3–3 (1993).

3. *See* I.C. 35–45–2–1 (1995 Supp.).

4. *See* I.C. 35–42–2–1 (1995 Supp.).

5. *See* I.C. 35–50–2–8 (1995 Supp.).

6. We note at the outset that Potter's statement of facts does not follow a narrative format as required by Ind.Appellate Rule 8.3(A)(5), rather it consists of description of the witnesses' trial testimony. We have stated repeatedly that a summary of witness testimony is not a statement of facts within the meaning of App.R. 8.3. *See, e.g., Hoover v. State* 582 N.E.2d 403, 405 (Ind.Ct.App. 1991). A statement of facts should be a concise narrative of the facts stated in the light most favorable to the judgment. *Nehi Beverage Co. v. Petri,* 537 N.E.2d 78, 82 (Ind.Ct.App.1989), *trans. denied.* Despite Potter's failure to comply with appellate rules and the holding of this court, we address the merits of the issues before us.

wife, Wendy Potter (Wendy). Potter and Wendy had been married and divorced three times. Two children were born during their first marriage. Each time the two separated, Potter pursued Wendy by following her around, breaking into her home, begging her to reconcile with him, and threatening to kill himself. Wendy usually reconciled with Potter because she felt it was easier to comply with his demands than to leave him.

On April 2, Wendy and one of the children were sick with the flu. That evening, Wendy was in the bathtub when she heard a knock on the door. Although she had instructed her children not to let their father in if he should come to the door, one of the girls opened the door. Wendy got out of the tub, dressed, and went into the living room to see Potter. When she picked up the telephone to call the police, Potter told her the action was pointless and Wendy discovered that her phone line was dead. Wendy argued with Potter, telling him to leave the home. Potter jumped on Wendy and began to beat her on the face, neck, and shoulders with his fists. He also struck her hands and arms when Wendy tried to shield her face. During this time, the children were sitting in a living room chair. They screamed at Potter to stop hitting their mother.

After awhile, Potter stopped beating Wendy. He pulled a kitchen chair in front of the door and sat down so that none of them could leave. He took a large butcher's knife from the front of his pants and removed a homemade sheath from the knife. Potter also had brought a small whiskey bottle and he began drinking from it.

Potter threatened to kill Wendy, the children, and himself. Although he had threatened Wendy's life in the past, he had never before threatened the lives of his children or held a weapon while making his threats. During this time, Potter remained extremely calm. This calm was in stark contrast to his angry behavior upon other occasions when he had beaten Wendy and threatened her life. Because his behavior was so uncharacteristic, Wendy became extremely afraid of him and took Potter's threats seriously. She attempted to appease him by stating that she loved him and would reconcile with him.

A neighbor, Tina Beverly, walked over to Wendy's house to check on her. Beverly knew that Wendy and her daughter were ill with the ·flu. When Beverly arrived, the lights were unusually low. She knocked on the door and no one answered. Beverly heard Wendy say, "If you loved me, why do you hit me?" (R. at 654). She also heard Potter warn Wendy that if she answered the door, he would kill her. Beverly continued knocking, and Wendy eventually came to the door. The women talked, and Wendy told Beverly that it was not necessary to call the police.

After Beverly left, Potter and Wendy continued talking. The children got tired and were put to bed. Potter did not leave the home. He demanded that Wendy have intercourse with him. She refused saying she had the flu. She offered to masturbate him, but he insisted on intercourse. By this time, Potter had put his knife in the kitchen portion of the trailer; however, Wendy still feared for her life because she felt he had "access to that knife any time he wanted it." (R. at 615). Wendy acquiesced to Potter's demand for sex. Afterwards Potter went to sleep on the floor in front of the door, and Wendy eventually fell asleep on the couch.

The next morning, Wendy talked Potter into re-connecting her telephone line. Potter then took one of the children and went to retrieve his car which he had left a substantial distance away from the trailer.

As a result of this incident, Potter was charged with rape, criminal confinement, intimidation, and battery. After a jury trial, he was convicted as charged and also was adjudicated as an habitual offender.

He now appeals.

### DISCUSSION AND DECISION

Potter contends that he was subject to ineffective assistance of counsel. He claims that his trial counsel:

a. failed to object to highly prejudicial evidence, and "opened the door" for prior misconduct to be admitted;

b. failed to object to the hearsay testimony of Police Officer Anderson;

c. told the jury that Potter would not be testifying against his counsel's advice;

d. failed to object to the State's final argument which propounded a theory of guilt that was not supported by the evidence;

e. failed to object to a final instruction which allowed Potter to be convicted of a form of rape with which he was not charged.[7]

In order to succeed on his claim, Potter must first show that trial counsel's performance was deficient or unreasonable under prevailing professional norms. *Marshall v. State*, 621 N.E.2d 308, 321 (Ind.1993). We must determine whether the identified acts or omissions, in light of all the circumstances, were outside the wide range of professionally competent assistance. *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind.1994), *reh'g denied, cert. denied* — U.S. —, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). "The proper judicial approach is highly deferential and requires a consideration of the totality of the evidence before the jury." *Johnson v. State*, 584 N.E.2d 1092, 1106 (Ind.1992), *cert. denied* 506 U.S. 853, 113 S.Ct. 155, 121 L.Ed.2d 105. It should not be exercised through distortions of hindsight. *Clark v. State*, 561 N.E.2d 759, 763 (Ind.1990). Counsel is presumed competent, and appellant must present strong and convincing evidence to rebut the presumption. *Id.*

The appellant must also show that the deficient performance was so prejudicial to his case that he was denied a fair trial. *Marshall*, 621 N.E.2d at 321. Denial of a fair trial occurs when a conviction results from a breakdown in the adversarial process, rendering the result unreliable and undermining confidence in the result. *Id.; Best v. State*, 566 N.E.2d 1027, 1031 (Ind.1991). "More specifically, the appellant must show that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confi-

dence in the outcome.'" *Madden v. State*, 656 N.E.2d 524, 527–28 (Ind.Ct.App.1995), *trans. denied* (quoting *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674 (1984)).

When a claim of ineffective assistance is based on counsel's failure to object, the appellant must show that the objection would have been sustained if made. *Hunter v. State*, 578 N.E.2d 353, 356 (Ind.1991), *reh'g denied*. Further, while in retrospect one might conclude that the strategy and performance at issue was not the best, isolated instances of poor strategy or unartfully executed examinations do not necessarily amount to ineffectiveness of counsel. *Mott v. State*, 547 N.E.2d 261 (Ind.1989). We will not second-guess the propriety of trial counsel's tactics. *See Hunter v. State*, 578 N.E.2d 353, 355 (Ind.1991), *reh'g denied*.

### A.

Potter first posits that his counsel was ineffective for failing to file a motion in limine and failing to object to evidence of his prior misconduct. He points to 31 instances "when the State elicited damning evidence of Potter's alleged uncharged misconduct." Appellant's Brief at 16. He further asserts that his attorney "managed to continue eliciting evidence of Potter's alleged prior misconduct" and opened the door to his history of prior arrests. *Id.* at 18.

When he alleges a failure to object, an appellant must demonstrate that an objection, had it been made, would have been sustained, and that the failure to object amounted to prejudice so substantial as to undermine the result of the trial. *Kutscheid v. State*, 592 N.E.2d 1235, 1239 (Ind.1992); *Drake v. State*, 563 N.E.2d 1286, 1290 (Ind. 1990). In his appellate brief, Potter fails to address whether any of the 31 objections would have been sustained. He merely argues that "not one of these alleged acts of prior misconduct was admissible against [him] pursuant to the Indiana Rules of Evi-

---

**7.** Potter also contends that his counsel was ineffective because he failed to request instructions on the statutory definitions of "knowingly" and "intentionally," and the defense of mistake of fact. Because we reverse his rape conviction on the basis of ineffective assistance of counsel, we decline to address this issue.

dence in effect at the time of his trial." Appellant's Brief at 21. Likewise, he fails to demonstrate prejudice except in a general argument contending that the "jury was likely to draw the 'forbidden inferences,'" there was similarity between the alleged misconduct and his charges at trial, and the use the State made of the testimony in its closing argument. *Id.* This argument is not sufficient to demonstrate that his trial counsel acted deficiently in not objecting in the enumerated circumstances. *Clark,* 561 N.E.2d at 763 (Absent a showing that a proper objection would have been sustained by the trial court, appellant cannot prevail on an ineffective assistance of counsel claim.); *see Swain v. State,* 647 N.E.2d 23, 24 (Ind.Ct. App.1995), *trans. denied.*

However, in his Reply Brief in order to answer the State's arguments, Potter attempts to argue in a cogent fashion the admissibility of and prejudice caused by the 31 instances when his attorney failed to object to prior misconduct. We will examine this argument to see if it meets the standard enunciated above.

Potter raised as error that his attorney failed to object to the police officer's testimony that Potter threatened to kill the officer and rape the officer's wife. However, Potter only argues that the State failed to address his contention of error. Potter makes no attempt to enunciate whether an objection to this testimony would have been sustained by the trial court, and thus has not proven ineffective assistance of counsel.

The State grouped together eight of the 31 instances cited by Potter stating that these instances constituted witness opinion and not prior misconduct. Potter finds it "difficult to understand why testimony which indicated, for example that Potter would not allow Wendy to have friends or go anywhere is an 'opinion' rather than a prior bad act." Appellant's Reply Brief at 5–6. Again, he neither demonstrates that an objection to these instances would have been sustained nor enunciates substantial prejudice.

The State then breaks the remaining testimony regarding prior acts of misconduct into three categories: Wendy's testimony regarding acts of violence Potter had perpetrated upon her during their relationship; Tina Beverly's testimony that Potter had threatened to kill Wendy on prior occasions; and the testimony of another neighbor, John Havenstein, that Potter had threatened to kill Wendy on prior occasions.

Regarding Wendy's testimony of violent conduct Potter had perpetrated during their relationship, Potter argues that the State woefully ignores the record when it asserts that the evidence of prior misconduct was admitted to show that Potter was calm on the night of the attack. He further alleges that the State must show the probative value of admitting his action outweighed its prejudicial impact.

However, Potter again ignores his burden in this appeal. He must prove that a sustainable motion could have been made and that he experienced prejudice. Potter also mischaracterizes the State's argument regarding Wendy's testimony. The State contended that the testimony was admissible because it showed that Potter did not act in conformity with his conduct on prior occasions. Wendy testified that Potter had never threatened her with a weapon although he had threatened to kill her, he had never threatened the lives of their children, and although he had been violent in the past, he had always been angry. The fact that he was extremely calm on April 2, and had a strange look in his eyes while he held the knife scared her more than other times. Potter has not demonstrated ineffective assistance in this argument.

Potter then lumps the direct testimony and cross-examination of Beverly and Haverstein about the "trailer incident" together. He argues that "[o]nce again, the issue is whether it was reasonable for [trial counsel] to fail to object the first time, and then repeat the damaging testimony during his cross-examination.... In other words, the presence of a 'permissible purpose' for the admission of this evidence is absent on the face of the Record." Appellant's Reply Brief at 11. However, here as before, Potter fails to show a sustainable objection and prejudice that is necessary to support his claim of ineffective assistance of counsel.

Finally, Potter takes issue with the State's argument that his trial counsel made a strategic decision not to object to evidence of Potter's prior misconduct in order to show that Wendy was "exaggerating the incident of April 2 in order to punish him for previous violent acts." *Id.* at 13. He asserts that the "State has failed to show that [trial counsel] exercised reasonable professional judgment by failing to object to this mountain of prior misconduct evidence." Appellant's Reply Brief at 12. Again Potter attempts to shift the burden of proof in his appeal to the State and fails to demonstrate ineffective assistance. Further, we note that the State's assertions of trial counsel's strategy are supported by counsel's closing argument. *See* (R. at 692–94).

### B.

■ Potter next asserts that his trial counsel failed to object to the hearsay testimony of Police Officer Anderson. Potter delineates several categories of evidence beginning with Anderson's recitation of his interview with Wendy and the children. Potter argues that his counsel's failure to object allowed the "drum beat repetition of the alleged victim's hearsay statements prior to calling the victim herself," citing *Modesitt v. State,* 578 N.E.2d 649 (Ind.1991) for support. He argues that a proper hearsay objection would have excluded Anderson's testimony. Potter then argues that his counsel should have objected to Anderson's hearsay testimony of a threat that Potter made in jail to an officer that he was going to kill Anderson and rape his wife. Potter asserts that the State offered this evidence for its truth. Lastly, Potter argues that Anderson should not have been allowed to testify about the threats that Potter made to his neighbors which Anderson heard during the course of his interviews with the neighbors. He particularly objects to a "highly prejudicial" summary statement of Anderson's: "They were scared of him. Even in their statements they told me that they know in their hearts that if Dan gets out he would kill them and anybody else that he had to." (R. at 546–47). We note that except for his argument regarding the threats Potter made to the jail officer, Potter once again fails to argue that a sustainable objection could have been made except to state that the evidence was inadmissible pursuant to Evid.R. 801(c) and 802, and that the evidence of his prior misconduct was highly prejudicial.

The State argues that Anderson's testimony would have been admissible regardless of whether trial counsel objected because the statements were made in the course of the police investigation into Potter's crimes, and thus were admissible under Evid.R. 801.

*Craig v. State,* 630 N.E.2d 207 (Ind.1994), clarified the application of the hearsay definition when there is a challenge to the testimony of police officers who are recounting out-of-court statements received during investigations. *Id.* at 210. The court detailed discrete steps to be taken by a trial court faced with a proper hearsay objection and thus we can determine whether such an objection would have been sustained by the trial court.

■ The trial court should first inquire if the testimony describes an out-of-court statement asserting a fact susceptible of being true or false. *Id.* at 211. If we assume for the purposes of this argument that the out-of-court statements do contain an assertion of fact, then the Court should consider what the evidentiary purpose of the proffered statement is. If we assume, again for the purposes of this argument, that the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid.R. 801(d), then the hearsay objection should be sustained, unless the statement fits an exception to the hearsay rule. As in *Craig,* the State contends that the statement's purpose was to document the course of police investigation, that is a "purpose other than to prove a fact which is asserted." *Id.* Thus, we consider the last criteria: "Is the fact to be proved under the suggested purpose for the statement relevant to some issue in the case, and does any danger of prejudice outweigh its probative value?" *Id.* In this case, the facts asserted are relevant to the issues in the case. *See Id.* (Relevance is the tendency to make a fact of consequence to the determination of the action more or less probable.); Evid.R. 401. An objection based on the

hearsay testimony of Officer Anderson would have been sustained by the trial court.

■■■■■ The question remains whether the erroneous admission of evidence requires reversal. This is also the second criteria for determining the ineffectiveness of counsel, thus crucial to our scrutiny. Reversal for the erroneous admission of hearsay evidence is appropriate where the evidence caused prejudice to the appellant's substantial rights. *Martin v. State*, 622 N.E.2d 185, 188 (Ind.1993), *reh'g denied*. In determining whether error in the introduction of evidence affected the appellant's substantial rights, we must assess the probable impact of that evidence upon the jury. *Timmons v. State*, 584 N.E.2d 1108, 1112 (Ind.1992). However, the improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Bonner v. State*, 650 N.E.2d 1139, 1141 (Ind.1995); *Jaske v. State*, 539 N.E.2d 14, 22 (Ind.1989). A reversal may be compelled if the record as a whole discloses that the erroneously admitted evidence "was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict." *Hardin v. State*, 611 N.E.2d 123, 132 (Ind.1993).

In the case before us, during the course of their testimony, Wendy, the children, and neighbors spoke in detail about the statements given to the Officer, and Potter was able to cross-examine each of these witnesses. The testimony of the officer did not elaborate on the later testimony of the witnesses, nor were any additional facts plainly inferable from the officer's testimony and not from the other properly admitted evidence adduced at trial when considered as a whole. The circumstances of this case are also distinguishable from *Modesitt* and *Bonner* in that in both of those cases the erroneously admitted evidence was emphasized through repetition in the separate testimony of three officers in *Bonner*, and in the testimonies of the victim's mother, a welfare caseworker, and a psychologist in *Modesitt*. *See Modesitt*, 578 N.E.2d at 650; *Bonner*, 650 N.E.2d

at 1142. In the present case, only Officer Anderson's testimony was erroneously admitted. Though his statements were excludable and impermissible as hearsay, there was little to undermine the credibility of the witnesses and we believe, in the record before us, the tendency of the Officer's statements to bolster the witnesses' credibility had only minor impact on the jury. Thus, we hold that the error was harmless, reversal is not required, and Potter's argument regarding his counsel's ineffectiveness for failing to object to the Officer's testimony must fail.

### C.

■■■■ At the close of the State's evidence, Potter's trial counsel was asked if he was ready to present his case. Trial counsel stated: "Against my advice, Mr. Potter does not wish to testify today and the defense rests." (R. at 669). The trial court then asserted:

All right. Thank you. As you have heard ladies and gentlemen, uh, Mr. Potter has chosen not to present evidence. As I have instructed you previously, that is his absolute right. He has no duty or obligation of any sort, uh, to put forward a defense nor are your to, uh, attach any significance whatsoever for his failure to do so. It is the state's duty, and the state's duty alone to prove Mr. Potter's guilt of the charges against him beyond a reasonable doubt. And, he has an absolute right to remain silent. And, uh, to put forth no defense and, uh, the fact that he has done so is of no significance whatsoever to, uh, the State's burden. It remains absolutely the same and you should not change or alter your, uh, deliberations or consideration of the evidence by virtue of his decision. Your decision should be based exclusively, totally and absolutely on the evidence that has been presented, uh, before you throughout the course of this trial, not on anything else. Including Mr. Potter's exercise of his right to, uh, put the State to its proof.

*Id.* at 669–70.

Potter asserts that his counsel's very act of telling the jury that he had advised Potter to testify but Potter had refused constituted

damaging testimony which effectively rendered Potter's constitutional privilege meaningless. Although we have never addressed a question regarding a defense attorney's impermissible comments, existing precedent pertaining to comments by prosecutors is applicable to the case before us.

■■■ Any comment which is subject to interpretation as a comment upon an accused's failure to testify is impermissible. *Parsons v. State*, 472 N.E.2d 915, 916 (Ind. 1985), *cert. denied* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857. We impose this restriction to shelter the defendant from being penalized for exercising his constitutional privilege not to testify. *Id.* A comment which may be interpreted as implying that the defendant must be guilty or he would have testified cannot be condoned.

■■■ However, even if the prosecuting attorney's actions constituted misconduct, an appellant must show that such action put him in a position of grave peril. *Patrick v. State*, 516 N.E.2d 63, 65 (Ind.1987). "This standard is measured by the probable persuasive effect the alleged misconduct had on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant." *Woodrum v. State*, 498 N.E.2d 1318, 1325–26 (Ind.Ct.App. 1986).

■■■ The presence of jury admonitions may be considered in determining whether an error is harmless. *Bonner*, 650 N.E.2d at 1142. However, the simple fact that an admonition is given does not necessarily mean that particularly prejudicial, erroneously admitted evidence will be erased from the minds of reasonable jurors or omitted from their deliberations. *Id.; see White v. State*, 257 Ind. 64, 76–77, 272 N.E.2d 312, 317 (1971); *Smith v. State*, 471 N.E.2d 733, 735–36 (Ind.Ct.App.1971). "Where the court adequately admonishes the jury and the prosecutor, which cures any alleged error, the extreme action of a mistrial is not warranted." *Woodrum*, 498 N.E.2d at 1326.

In the present case, although open to some interpretation, the single comment of Potter's trial counsel was followed immediately by a thorough admonishment by the trial court. We do not believe that Potter was put in a position of grave peril. Further, assuming arguendo, that the comment was improper and prejudicial, the prompt admonition by the trial court was, in this case, sufficient to cure the harm, if any. *Parsons v. State*, 472 N.E.2d 915, 916 (Ind.1985), *cert. denied* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857; *see Clark v. State*, 269 Ind. 316, 323, 380 N.E.2d 550, 554 (1978); *Moore v. State*, 267 Ind. 270, 276, 369 N.E.2d 628, 631 (1977).

### D.

■■■ During the State's closing argument, the Prosecutor stated:

> What do we need to prove on Intimidation? The Judge will tell you that the only thing we need to prove is that the Defendant communicated a threat with the intent of the person engage in conduct against her will [sic]. For example, don't answer the door or I will kill you. *For example, I will kill you and the kids unless you take me back.* Countless examples, a threat unless you do something against your will. Lots of threats, uh, one after another.

(R. at 675–76 (emphasis supplied)). Potter contends that the emphasized "threat is not supported by the Record. During the State's case-in-chief, after being specifically asked, Wendy testified that Potter 'never actually came right out and said take me back [or] I'm going to kill you.'" Appellant's Brief at 34 (quoting R. at 584).

■■■ The prosecutor may comment on evidence presented to the jury, drawing logical conclusions from such evidence, as long as counsel does not imply personal knowledge concerning the evidence. *Hale v. State*, 547 N.E.2d 240, 243 (Ind.1989); *Jarrett v. State*, 580 N.E.2d 245, 250 (Ind.Ct.App.1991), *trans. denied* (1992). The prosecutor may argue both facts and law during final argument and may propound any conclusions based upon his or her analysis of the evidence. *Fassoth v. State*, 525 N.E.2d 318, 324 (Ind.1988).

The information charged that Potter, "while armed with a deadly weapon, to-wit, a knife, did communicate a threat to another person, to-wit: Told Wendy Potter he would

kill her, with the intent that Wendy Potter engage in conduct against her will." (R. at 10).

The record reveals that Potter threatened to kill himself, Wendy, and the children. (R. at 582). Wendy testified that Potter initially came to the trailer that evening because her wanted to revive their relationship. Indeed, Potter's threats forced Wendy to placate Potter by telling him that she would take him back. Thus, the prosecution's final argument is supported by the record and Potter cannot show that an objection by his trial counsel could have been sustained.

### E.

■ Finally, Potter asserts that his counsel was ineffective for failing to object to a jury instruction defining the crime of rape. Instruction No. 8 asserted, in pertinent part:

> The crime of Rape, Class "A" Felony, as charged by the information, is defined by statute as follows:

> A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) The other person is compelled by force or imminent threat of force; commits Rape, a Class "B" Felony. However the offense is a Class "A" Felony if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to a person other than a defendant.

(R. at 251.) Potter was charged by information with rape as a class A felony because he was "armed with a deadly weapon, to-wit: a knife." (R. at 10). He now argues that the instruction told the jury that he could be convicted on the basis of an element with which he had not been charged, and that his trial counsel was ineffective for failing to object to this instruction. He is correct.

■ Generally it is not erroneous to give an instruction in the language of the applicable statute; however, an instruction must not be broader than the indictment or information, and a jury may not be permitted to find the defendant guilty of an offense defined by the statute but which was not charged. *Dixon v. State,* 425 N.E.2d 673, 677 (Ind.Ct.App.

1981). Instruction No. 8 advised the jury that the statutory section which they were given defined rape as charged in Count I of the information. The instruction went on to describe rape as an A felony if it was committed by threatening deadly force, committed with the use of a deadly weapon, or if it resulted in serious bodily injury to another person. While it is proper to instruct the jury as to the statutory section which a defendant is charged with violating, it was improper to state this instruction defined the crime "as charged." The trial court erred by giving this instruction, and had Potter's trial counsel objected, the trial court should have sustained the objection.

The trial court's error in giving the contested instruction to the jury makes this case analogous to *Kelly v. State,* 535 N.E.2d 140 (Ind.1989), and distinguishable from *Dixon,* 425 N.E.2d 673. In *Kelly,* conflicting evidence and an over broad instruction permitted the jury to convict the defendant of either non-consensual confinement, as charged in the information, or confinement by removal as allowed by the instructions but not charged by information. The supreme court reversed the defendant's conviction, concluding: " 'It cannot be said therefore that the erroneous instructions ... did not prejudice appellant's rights and bring about a verdict of guilty upon a theory for which there is no basis in the affidavits upon which he was tried.' " *Kelly,* 535 N.E.2d 140, 142 (quoting *Shelton v. State,* 209 Ind. 534, 539–40, 199 N.E. 148, 150 (1936)).

In *Dixon,* the information charged the defendant with child molesting by attempting to perform sexual intercourse. The court instructed the jury on child molesting by attempting to perform sexual intercourse, as charged, and child molesting by engaging in deviate sexual conduct, which was not charged. Although this instruction was erroneously given, reversal was not warranted because there was no evidence to support the charge underlying the erroneous part of the instruction, thus the jury could not have convicted the defendant on this charge, and the instruction could not have harmed the defendant. *Dixon,* 425 N.E.2d at 677–78.

In the present case, Potter was entitled to know the character of the charge against him. Unlike *Dixon,* where proof was not tendered to support the erroneous instruction, the jury in the case at bar could have concluded that Potter was guilty only of the uncharged offense of rape committed by threatening the use of deadly force rather than rape committed while armed with a deadly weapon as charged. Certainly, the record contains many threats that Potter made from the time he entered Wendy's trailer until the conduct in question. Thus, we cannot say that the erroneous instruction did not prejudice Potter's substantial rights and bring about a verdict of guilty upon an uncharged offense.

Potter has demonstrated that his trial counsel was ineffective because an objection to Final Instruction No. 8 would have been sustained by the trial court, and Potter's substantial rights were prejudiced by this instruction. We reverse his conviction of rape as a class A felony.

### CONCLUSION

Accordingly, we affirm Potter's convictions for criminal confinement, intimidation, and battery. We reverse his conviction of Count I for rape.

Because Potter's habitual offender enhancement was coupled with his rape conviction, the trial court upon remand must resentence him in accordance with I.C. 35-50-2-8. *See McCormick v. State,* 262 Ind. 303, 317 N.E.2d 428 (Ind.1974); *Cooley v. State,* 642 N.E.2d 284, 285 (Ind.Ct.App.1994), *reh'g denied* (If there is another valid underlying felony conviction entered at the time of the vacated felony conviction, an habitual offender enhancement need not be vacated along with the underlying felony with which it was originally coupled.).

Judgment affirmed in part, and reversed and remanded in part.

DARDEN, J., concurs.

HOFFMAN, J., concurs in part and dissents in part with separate opinion.

HOFFMAN, Judge, concurring in part and dissenting in part.

I concur except to section E. to which I respectfully dissent. The elements required to convict Potter of the A felony necessarily include the elements for conviction as a B felony. Conviction for the A felony requires the threat embodied in the B felony and at least one of the three additional components: 1) threatening deadly force; 2) using a deadly weapon while making the threat; or 3) actually causing serious bodily injury. Here, the charging Information for rape states:

#### Count I: RAPE, Class A Felony

Richard L. Anderson, being duly sworn upon his oath, says that:

On or about the 2nd day of April, 1994, in Noble County, State of Indiana, DANIEL R. POTTER, while armed with a deadly weapon, to-wit: a knife, did knowingly or intentionally have sexual intercourse with Wendy Potter, a member of the opposite sex, the said Wendy Potter being compelled by the imminent threat of force to have sexual intercourse with Daniel R. Potter.

All of which is contrary to the form of the statute in such cases made and provided, to-wit: I.C. 35-42-4-1 and against the peace and dignity of the State of Indiana.

The rape statute provides:

A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) the other person is compelled by force or imminent threat of force;

(2) the other person is unaware that the sexual intercourse is occurring; or

(3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given;

commits rape, a Class B felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it re-

sults in serious bodily injury to a person other than a defendant.

IND.CODE § 35–42–4–1 (1989 Supp.).

Neither the instruction nor the Information refer to subsections (2) and (3) of the statute, which do not apply in the present case. However, both the instruction and the Information specify the elements required for the Class B felony and the additional component required to elevate the charge to a Class A felony. Accordingly, the present case is unlike the circumstances in *Kelly* where the two subsections of the confinement statute contained distinct components, i.e., non-consensual restraint in place or confinement by removal. In the case of a statute where the alternative components are not dependent upon each other, *Kelly* would control.

Further, to the extent that the B felony rape is a lesser-included offense of the A felony rape and evidence to convict on the B felony was present, the trial court could have instructed on the B felony, as a lesser included. Our supreme court in *Wright v. State*, 658 N.E.2d 563, 566–567 (Ind.1995) clarified the appropriate considerations in determining whether an instruction on lesser-included offenses is warranted. The court determined that a lesser-included instruction is warranted when the charging information includes the elements within the lesser offense or the lesser offense is inherently included. *Id.* Here, the elements of rape, as a B felony, are inherently included in the A felony. *See Pennington v. State*, 523 N.E.2d 414, 416 (Ind.1988) (rape without threat of deadly force lesser-included offense of rape with threat of deadly force).

For the above-stated reasons, I would find any possible error in the giving of the instruction harmless and would affirm as to the conviction for rape.