**Darren MADDEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9503–PC–132.

Court of Appeals of Indiana.

Oct. 19, 1995.

Transfer Denied Dec. 13, 1995.

Susan K. Carpenter, Public Defender, Richard Denning, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Darren Madden was convicted of attempted rape,[1] a Class A felony, confinement,[2] a Class B felony, robbery,[3] a Class B felony, and burglary,[4] a Class A felony. Madden appeals the denial of his petition for post-conviction relief, raising the following issues:

1. Whether the trial court violated Madden's due process right to be present at every stage of the proceedings by communicating with the jury in his absence?

2. Whether the trial court violated the prohibition against double jeopardy by enhancing each of Madden's felonies on the basis that he was armed with a deadly weapon?

3. Whether Madden received ineffective assistance of trial and appellate counsel?

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 22, 1986, Barbara Miller answered her front door. A young man asked Miller if she needed her grass cut. When Miller declined, the man got on his bicycle and rode away.

Approximately forty-five minutes later, the man returned, entered Miller's house, grabbed her, beat her with the butt end of a knife, and told her he wanted all of her money. After Miller pointed out her wallet, the man forced her into the bedroom, pulled off her clothes, and threw her onto the bed. Miller kicked her attacker in the groin, and the man left the bedroom and the house, taking Miller's wallet with him.

Shortly after the incident, Miller was shown composite pictures. She identified Madden as her assailant. A photo array containing Madden's picture was prepared and subsequently introduced into evidence during Madden's trial. During deliberations, the jury sent a note to the judge requesting the photo array. Without notifying the parties, the trial judge denied the jury's request. Madden was subsequently convicted on all counts and was sentenced to fifty years on each of the Class A felonies and to twenty years on each of the Class B felonies.

Our supreme court affirmed Madden's conviction and sentence in his direct appeal.[5] Madden filed a petition for post-conviction relief. The post-conviction court denied Madden's petition, and this appeal followed.

## DISCUSSION AND DECISION

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind.Post–Conviction Rule 1, § 5; *Barker v. State* (1993), Ind.App., 622 N.E.2d 1336, 1337, *trans. denied.* To succeed on appeal

---

1. *See* IC 35–42–4–1 (1986 Supp.).

2. *See* IC 35–42–3–3 (1986 Supp.).

3. *See* IC 35–42–5–1 (1986 Supp.).

4. *See* IC 35–43–2–1 (1986 Supp.).

5. *See Madden v. State* (1990), Ind., 549 N.E.2d 1030.

from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that of the trial court. *Id.*

■ The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *McBride v. State* (1992), Ind.App., 595 N.E.2d 260, 262, *trans. denied.* If an issue was available on direct appeal but not litigated, it is waived. *Id.*

■ An exception to the doctrine of waiver arises when errors are so blatant and serious that to ignore them would constitute a denial of fundamental due process, i.e., fundamental error. *Id.* The fundamental error doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that the error was so prejudicial to the rights of the appellant that he could not have had a fair trial. *Owens v. State* (1989), Ind.App., 543 N.E.2d 673, 675.

## I.

### Jury Communication

During its deliberations, the jury requested to see the photo array which had been admitted into evidence. The trial court denied the request. Madden argues that fundamental error occurred when the trial court failed to inform Madden of the request. He states that since the jury could have had doubts as to Miller's credibility in identifying Madden as her attacker, he should have been afforded the opportunity to question the jurors. Madden further argues that the right to be present during all critical stages of a criminal proceeding is a fundamental right and can not be waived.

■ When jurors request guidance from the court during deliberations, the proper procedure is for the judge to notify the parties so they may be present in court before the judge communicates with the jury, and the judge should inform the parties of his proposed response to the jury. *Marsillett v. State* (1986), Ind., 495 N.E.2d 699, 709. An inference of prejudice arises from a judge's

*ex parte* communication to the jury, and this inference creates a rebuttable presumption that error has been committed. *Id.* If this inference is rebutted, however, the error is deemed harmless. *Id.*

In *Marsillett,* our supreme court held that when the trial judge merely responds to the jury question by denying their request, any inference of prejudice is rebutted and the error, if any, is harmless. *Id.* Moreover, the court held that the denial of the jury's request to review the exhibits does not result in prejudicial error. *Id.*

■ Here, during deliberations, the jury requested the photo array. Although the request was denied by the trial judge outside Madden's presence, the denial did not result in prejudice. In the absence of prejudice, the communication between the trial judge and the jury outside Madden's presence was harmless.

## II.

### Double Jeopardy

■ Madden was sentenced for attempted rape as a Class A felony (as opposed to a Class B felony), confinement as a Class B felony (as opposed to a Class D felony), and robbery as a Class B felony (as opposed to a Class C felony), based on his use of a knife while committing the offenses. He argues that his fundamental right against double jeopardy was violated when a single element, "while armed with a deadly weapon," was used to elevate more than one crime. Although this issue was not raised upon direct appeal, it is not waived because double jeopardy, if shown, constitutes a fundamental error. *Odom v. State* (1995), Ind.App., 647 N.E.2d 377, 379, *trans. denied.*

■ Madden cites *Bevill v. State* (1985), Ind., 472 N.E.2d 1247, and *Lyles v. State* (1991), Ind.App., 576 N.E.2d 1344. In *Bevill,* the defendant was charged with burglary as a Class A felony because he "unlawfully and feloniously inflicted bodily injury on his victim," and attempted murder because he attempted to kill the victim by "touching, striking, cutting and stabbing [the victim] with a knife." *Bevill,* 472 N.E.2d at 1253. The

court held that since Bevill inflicted injury on the victim only once, he could not be punished twice for a single offense arising from one set of circumstances. *Id* at 1254. The serious bodily injury was inflicted during the commission of only one crime, attempted murder, and could not be used to support a conviction for another Class A felony without subjecting the defendant to double jeopardy. *Id.*

In *Lyles,* the defendant was convicted of battery with a deadly weapon, a Class C felony, and intimidation by use of a deadly weapon, a Class C felony. The court held that the enhanced charges could not stand because the use of the same weapon could not be utilized to enhance both charges. *Lyles,* 576 N.E.2d at 1352.

In *White v. State* (1989), Ind.App., 544 N.E.2d 569, the defendant was convicted of confinement while armed, a Class A felony and deviate conduct while armed, a Class B felony. The court distinguished *White* from *Bevill,* noting that double jeopardy occurred in *Bevill* where the defendant was punished twice for a single injury. *White,* 544 N.E.2d at 570. By contrast, White committed three separate crimes while armed:

> "The element causing the elevation of White's offenses was not the act of harming someone. It was the threat of harm from a deadly weapon. That threat occurred during each of the offenses for which White was convicted and as such was properly punishable. The threats from the weapon were as distinct as if he had robbed a grocery in the morning, raped a victim in the afternoon, and abducted a child in the evening, and using the same shotgun to threaten each separate victim."

*Id.* at 570–71.

More recent decisions of this court have followed the logic of *White. See Brown v. State* (1994), Ind.App., 633 N.E.2d 322, *trans. denied; Barker v. State* (1995), Ind.App., 622 N.E.2d 1336; *Smith v. State* (1993), Ind. App., 611 N.E.2d 144, *trans. denied. Lyles* was decided by a two to one vote. We note that Judge Garrard who concurred in *Lyles*

subsequently decided that *Lyles* was erroneously decided on this point.[6]

Here, as in *White,* the threat of the use of a deadly weapon occurred during the commission of separate and distinct crimes. Madden confined Miller by blocking any way of escape from his presence. The offense was aggravated by his possession of a deadly weapon during the confinement. Madden then told Miller that he wanted all of her money, and Miller complied by pointing out her wallet. Madden then drug the victim into the bedroom and attempted to rape her. Madden eventually left the house, taking Miller's wallet with him.

Madden was charged with: 1) attempting to have sexual intercourse with the victim by using force and while armed with a deadly weapon, to-wit: a knife; 2) confinement by threat of force and while armed with a deadly weapon; 3) robbery by threat of force and while armed with a deadly weapon, *Record* at 2–3. Madden committed three separate and distinct offenses while armed with a knife; he was not placed in double jeopardy.

### III.

#### Assistance of Counsel

Madden argues that he received ineffective assistance of both trial and appellate counsel because his counsel failed to argue that: 1) Madden's rights were violated when improper communication occurred between the judge and the jury; 2) the trial court violated the prohibition against double jeopardy by enhancing the level of each of Madden's felonies on the basis that he was armed with a deadly weapon.

In order to show ineffective assistance of counsel, the defendant must show 1) that counsel's performance was deficient; and 2) that the deficient performance was prejudicial. *Smith v. State* (1993), Ind.App., 611 N.E.2d 144, 146, *trans. denied,* (citing *Strickland v. Washington* (1984), 466 U.S. 668, 695, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674, 695–96). More specifically, the defendant must show that there is a "reasonable probability that, but for counsel's unprofes-

6. *See Peterson v. State* (1995), Ind.App., 650   N.E.2d 339, 340.

sional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068 (emphases deleted).

It has been further held that:

"[j]udicial scrutiny of counsel's performance is highly deferential. It should not be exercised by second-guessing counsel's actions after learning they may not have been appropriate. There is a strong presumption that counsel's assistance fell within prevailing professional norms, and an appellant is required to present strong and convincing evidence to rebut that presumption. Moreover, a showing of inexperience, isolated incidents of poor strategy, or bad tactics does not necessarily establish ineffective assistance of counsel."

*Bradford v. State* (1988), Ind.App., 517 N.E.2d 802, 803–04, *trans. denied.*

Because we have rejected Madden's claims of improper jury communication and violation of double jeopardy protections, Madden sustained no prejudice as a result of counsel's failure to raise such issues, and Madden's assertions that he received ineffective assistance of counsel must fail.

Affirmed.

FRIEDLANDER and DARDEN, JJ., concur.