Henry EMERSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9601–PC–61.

Court of Appeals of Indiana.

Dec. 31, 1996.

Transfer Granted March 11, 1997.

---

722

Susan K. Carpenter, Public Defender, Amy E. Karozos, Deputy Public Defender, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

KIRSCH, Judge.

Henry Emerson was convicted of one count of battery[1] as a Class C felony, one count of battery as a Class B misdemeanor, and found to be an habitual offender.[2] Emerson appeals the denial of his petition for post-conviction relief, raising four issues. We address only one of the issues because it is dispositive and warrants reversal. It is whether the trial court committed fundamental error when it instructed the jury on the elements of the felony battery charge.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict reveal that on the evening of July 25, 1986, Robert Brown was playing cards and talking with his son, Lynn Brown, in Douglass Park located in Indianapolis, when they were attacked by Henry Emerson, Derrick Jones, and John Wesley Emerson (hereafter Emerson, Jones, and John Wesley). Emerson, Jones and John Wesley beat Robert about the head with their fists, beat Lynn with sticks, and then Jones stabbed Lynn in the chest with a knife.

Emerson, Jones, and John Wesley were charged with attempted murder and two counts of battery. All three were tried in the same jury trial where they were acquitted of attempted murder, but convicted on the two

1. *See* IC 35–42–2–1.

counts of battery. In the second phase of the trial, the jury found Emerson to be an habitual offender. As a result, the trial court enhanced Emerson's five-year sentence for the Class C felony battery by thirty years. Emerson also received six months on the Class B misdemeanor battery, the sentences to run concurrently.

Emerson filed a direct appeal to our supreme court which affirmed his convictions. Emerson then filed a Petition for Post–Conviction Relief. After an evidentiary hearing, the trial court entered Findings of Fact and Conclusions of Law denying Emerson's petition. Emerson appeals from that denial.

## DISCUSSION AND DECISION

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind.Post–Conviction Rule 1(5); *Madden v. State*, 656 N.E.2d 524, 525 (Ind. Ct.App.1995), *trans.denied.* In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Weatherford v. State*, 619 N.E.2d 915, 916 (Ind.1993). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that of the post-conviction court. *Madden*, 656 N.E.2d at 525–26.

The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id.* at 526. If an issue was available on direct appeal but not litigated, it is waived. *Id.* An exception to the doctrine of waiver arises when errors are so blatant and serious that to ignore them would constitute a denial of fundamental due process, i.e., fundamental error. *Id.* The fundamental error doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that the error was so

2. *See* IC 35–50–2–8.

prejudicial to the rights of the appellant that he could not have had a fair trial. *Id.*

Emerson argues that the trial court erred in its battery instruction to the jury, and that such error allowed the jury to convict him of a crime with which he was not charged. Emerson has waived review of this issue through his failure to object to the instruction at trial, but seeks to avoid procedural default of the issue by arguing that the error was fundamental. This court may consider issues raised for the first time on postconviction relief if necessary to serve the ends of substantial justice or to prevent the denial of fundamental rights. *See Davis v. State,* 635 N.E.2d 1117, 1123 (Ind.Ct.App. 1994).

The charging information read that "Henry G. Emerson ... did knowingly touch Lynn Brown in a rude, insolent, or angry manner, to-wit: STRUCK, STABBED AND CUT LYNN BROWN, by means of deadly weapons, to-wit: STICKS AND A KNIFE." *Trial Record* at 44. At the close of the evidence, the court gave the following instruction:

"A part of the Statute of the State of Indiana which defines and states the essential elements of the crime of Battery, a Class C felony, with which the defendants are charged in Count Two of the Information, reads as follows:

"A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery. ....a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon."

*Record* at 134.

Emerson contends that he was denied fundamental due process and due course of law when the trial court erroneously instructed the jury that they could find Emerson guilty of battery as a Class C felony if they found that the battery either resulted in serious bodily injury or was committed by means of a deadly weapon. Emerson maintains that the erroneous instruction given by the trial court relieved the State of the burden of proving beyond a reasonable doubt that Emerson used a deadly weapon because it gave the jury the option of convicting him of battery resulting in serious bodily injury, a crime with which he was not charged.

Article 1, Section 13 of the Indiana Constitution entitles a criminal defendant to be advised of "the nature and cause of the accusation against him, and to have copy thereof." The information which must be included in an indictment or information alleging a criminal offense is delineated in IC 35-34-1-2. Among other requirements, an information must state "the name of the offense in the words of the statute or any other words conveying the same meaning" and must set forth "the nature and elements of the offense charged in plain and concise language without unnecessary repetition." IC 35-34-1-2(a)(2); *see also Kelly v. State,* 535 N.E.2d 140, 141 (Ind.1989). Furthermore, an instruction must not be broader than the indictment or information, and a jury may not be permitted to find the defendant guilty of an offense defined by the statute but which was not charged. *Dixon v. State,* 425 N.E.2d 673, 678 (Ind.Ct.App.1981).

Here, the information charged Emerson with knowingly touching Lynn Brown in a rude, insolent, or angry manner, by means of deadly weapons. However, the final instructions informed the jury that the statute defining and stating the essential elements of the crime of battery, a Class C felony, with which Emerson was charged, provides that a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class C felony, if it results in serious bodily injury to any other person *or* if it is committed by means of a deadly weapon. Allowing an instruction stating that battery as a Class C felony could be proven if the touching resulted in serious bodily injury when Emerson was charged with battery, as a Class C felony, committed by means of a deadly weapon, was fundamental error on the part of the trial court. *See Holland v. State,* 609 N.E.2d 429, 433 (Ind.Ct.App.1993) (Indiana courts consistently have found it to be fundamental error to convict a defendant for an offense which includes an element not included in the charge).

Reversal of Emerson's conviction is mandated by the supreme court's decision in *Kelly*, 535 N.E.2d 140. In that case, the defendant was charged with confinement of another person without that person's consent. *Id.* at 141. The instruction to the jury, however, stated that criminal confinement is committed by either confining another person or by removing that person by fraud, enticement, force, or threat of force. *Id.* The defendant was not charged with confinement by removal. The supreme court held that such an instruction was error because, based upon the evidence presented, the jury could have concluded that the defendant was guilty of the uncharged offense of confinement by removal rather than nonconsensual confinement as charged. *Id.* at 142–43.

In so holding, the court distinguished *Kelly* from this court's decision in *Dixon*, 425 N.E.2d 673. In *Dixon*, the information charged the defendant with child molesting by attempting to perform sexual intercourse. The trial court instructed the jury on the crime of child molesting by engaging in deviate sexual conduct, an uncharged crime. Reversal was not warranted, however, because there was no evidence presented to the jury to support the charge underlying the erroneous instruction. Accordingly, the jury could not have convicted the defendant on the deviate sexual conduct charge, and the erroneous instruction could not have harmed the defendant. *Dixon*, 425 N.E.2d at 678–79.

The same distinction that was made between *Kelly* and *Dixon* can be made here. That is, there was evidence presented at Emerson's trial to support the charge upon which the jury was erroneously instructed. The testimony elicited from Lynn Brown by the Prosecutor was as follows:

"Q. When you came back [to help your father], what, if anything did you do?

A. Well, at that time, Derrick Jones, he had a knife out, and he was sort of standing over my father, so at the time I was coming back, this guy, Herbie, called me, and he had slipped me a knife, and he told me to protect your father, get them off your father.

. . . .

Q. Okay. And what, if anything, did you do at that time after having gotten the knife?

A. I sort of just went back towards where they was attacking my father at, and at the time I got there, they had just kind of seen me coming, and they all three, just two of them jumped up off him, all three of them charged coming after me.

Q. Okay. When you say all—what happened next?

A. After three of them was coming after me, I just sort of just started running backwards, because they got my father, I was running backwards by them trying to get off, come after me, and I just ran backwards. That is when, as I was running backwards, they was coming, I slipped and fell, and that's when [Henry Emerson] dived on me, on top of me, and he start, that's when they had sticks and limbs at that time, the Wesley's, and Derrick had a knife, and Gray Lee dived on top of me as I fell, and that's when they started hitting me with the sticks and kicking me and hitting me in my face.

. . . .

Q. Okay. Let's back up a minute. Who, who first jumped on you at this point in time?

A. It was [Henry Emerson].

Q. Alright. He jumped on you. Then what was the next thing that happened?

A. I was—they started hitting me with sticks and, and hitting me in the face with their fists.

Q. You say they started hitting you with sticks. Who specifically hit you with sticks?

A. Well, [Henry Emerson] and Wesley had sticks.

. . . .

Q. Could you see who hit you with a knife?

A. Yes, I could.

Q. And who was that?

A. That was Derrick Jones.

. . . .

Q. After you were hit with the knife, what, if anything, happened then?

A. After I was hit with the knife, they just sort of ran off, and as they ran off, that's when a lady assisted me, and she had kind of just walked right up and said that you'd been cut serious, and she took me to her house and said that she would call the ambulance.

Q. And what, if anything happened after that?

A. And once I got to her house I went on the porch, and I sat on the edge of her porch, and she said she was going into the house to get a rag to kind of stop the bleeding, and as she came out, I kind of got up off the porch and walked out to the sidewalk, which is that's when I collapsed, and as I collapsed, that's when I heard the ambulance and police.

Q. And did an ambulance show up?

A. Yes, they did.

Q. What, if anything, did they do with you?

A. They just sort of laid me down and told me, relax, and they put me on an IV and everything, and just asked me, was I breathing okay, and at that time, they put me on a stretcher and rushed me to the hospital.

Q. Were you bleeding at that time?

A. Yes, I was.

Q. Could you describe for the ladies and gentlemen of the jury what the injury was?

A. It was my lungs.

. . . .

Q. Aside from the stab injury in your chest or back, did you suffer any other injuries as a result of this?

A. Yes, I did.

Q. What were those?

A. I had stitches in my chin up here, and I had a scarred up hand, and just a bruise up side my head."

*Record* at 521–31.

 Although the evidence was conflicting, the testimony in the Record establishes that Jones stabbed Lynn with a knife while Emerson and John Wesley beat Lynn with sticks. The testimony presented at trial may have convinced the jury that Emerson's Class C battery was not committed by means of a deadly weapon, but instead was committed as a result of the serious bodily injury inflicted upon Lynn by Emerson. For this reason, Emerson was harmed when the trial court gave the jury the erroneous instruction. This error acted to deny Emerson a fair trial and the process that was due to him. This is fundamental error. *See Holland,* 609 N.E.2d at 433.[3]

 Although double jeopardy bars retrial in cases of reversal for insufficient evidence, it does not bar retrial in cases of reversal for trial error. *Warner v. State,* 579 N.E.2d 1307, 1311 (Ind.1991) (citing *Burks v. United States,* 437 U.S. 1, 14–15, 98 S.Ct. 2141, 2148–49, 57 L.Ed.2d 1 (1978)). Because the present case involves trial error and not insufficient evidence, double jeopardy principles do not bar retrial.

The judgment of the post-conviction court is reversed as to Emerson's felony battery conviction, and the court is instructed to grant post-conviction relief and reverse the felony conviction. Because Emerson's felony battery conviction was one of the felonies underlying the jury's determination that Emerson is an habitual offender, the habitual offender determination must be reversed as well. Because no issues have been presented on the misdemeanor battery charge, that conviction and sentence stand.

---

3. This court recently reached a similar conclusion in *Potter v. State,* 666 N.E.2d 93 (Ind.Ct.App. 1996), in which the defendant was charged with rape as a Class A felony based upon his use of a deadly weapon. We held that the trial court erred by instructing the jury that rape as a Class A felony, as charged against the defendant, is committed by using or threatening the use of deadly force, by being armed with a deadly weapon, or if it results in serious bodily injury to a person other than a defendant. *Id.* at 103. On August 6, 1996, the supreme court granted transfer in *Potter.* While the supreme court has not yet rendered an opinion, we may not rely on this court's decision because the granting of transfer vacates and holds for naught such decision. Ind.Appellate Rule 11(B)(3); *Chandler v. Board of Zoning Appeals,* 658 N.E.2d 80 n. 1 (Ind.1995).

Reversed and remanded for proceedings consistent with this opinion.

SULLIVAN and RILEY, JJ., concur.