**Rodney Lee BOYKO Petitioner**

v.

**Al C. PARKE Respondent**

**No. 1:97cv042 AS.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 21, 1999.

Howard B. Eisenberg, Milwaukee, WI, for petitioner.

Michael A. Hurst, James B. Martin, Indiana Attorney General, Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This petition for relief under Title 28 U.S.C. § 2254 was first filed in the Fort Wayne Division of this Court on or about November 18, 1997. The current docket sheet discloses eighty-three items through September 7, 1999. More recently in this case this petitioner, Rodney Lee Boyko, has had the excellent professional services of Dean Howard B. Eisenberg of Milwaukee, Wisconsin and this Court is greatly appreciative of those professional services. This Court is also immediately aware of the published decision of the Court of Appeals in *Boyko v. Anderson,* 185 F.3d 672, and it is the intent of this Court to comply with the final mandate in that decision. Certainly the discussions there clearly indicate that any judicial tinkering in the District Court after the filing of a Notice of Appeal and during the pendency of a Notice of Appeal, however well intentioned, is to be avoided.

The petitioner has sought to expand the record, undertake further discovery and delay disposition, all of which are **DE-NIED** since this Court will proceed as it must on the extensive record presently available to this Court and to the Court of Appeals requires a walking through elongated proceeding. More here needs to be said with reference to this effort by the petitioner to expand the record, undertake discovery and delay the disposition of the petition. This Court has repeatedly said that its principal concern throughout these proceedings is that it made a mistake with regard to the time requirements under 28 U.S.C. § 2244(d)(1). That concern remains paramount with this Court.

It is necessary to be clear about the statutory preconditions and the statutory limitations on U.S. District Court review of state court criminal convictions as presently exists in 28 U.S.C. § 2254. There are some conceptual difficulties found in recent Court of Appeals decisions that may come into play with regard to ruling on a Rule 60(b) motion as the same may play out in reference to the inhibitions of and limitations for successive petitions under 28 U.S.C. § 2244. This Court and the Court of Appeals wrestled mightily with this very problem in *Burris v. Parke,* 130 F.3d 782 (7th Cir.1997), but the teaching of *Burris v. Parke* about which this Court is completely conversant is not the only inhibition in regard to the efforts of this petitioner to greatly expand this record and the issues here. Certainly the decisions of the Court of Appeals of Indiana and especially the most recent one deal extensively with issues regarding ineffective assistance of counsel and deal with same under a series of state law claims but the analysis there is consistent with the analysis of the Supreme Court of the United States in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

There is also a rule problem with the purported expansion of the record beyond that which was already generated in the State Court system and thus far in the Federal District Court and the Court of Appeals. Close attention must be given also to Rule 7 of the rules governing § 2254 cases in the United States District Court. It is true that there is some discretion, although not total, at the District Court level to provide for the expansion of a record to include "additional materials relevant to the determination of the merits

of the petition". The primary legislative purpose of this rule is to permit United States District Courts to dispose of § 2254 petitions that may not be disposed of on the pleadings without the time and expense required for an evidentiary hearing.

■ This Court does not conceive that this case is a candidate for an evidentiary hearing in the Court under its *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), and the formal record here including two extensive decisions by the Court of Appeals of Indiana does not require further expansion. The more recent Congressional Enactment as reflected in 28 U.S.C. § 2254(e)(2) is a further inhibition upon permitting the litigation of issues raised for the first time in the United States District Court which were not subject to their presentation to the State Court under *Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *see also Cawley v. DeTella,* 71 F.3d 691(7th Cir.1995). This idea was driven home pointedly by the Supreme Court more recently in *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

■ With regard to discovery, Rule 6 of the rules governing § 2254 cases is also relevant. It precludes discovery except when conducted pursuant to leave of court and then only after the party seeking the discovery in the collateral proceeding shows good cause. The distinction between § 2254 cases and cases under 42 U.S.C. § 1983 was pointedly made in this regard by the Supreme Court of the United States in *Bracy v. Gramley,* 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). *See also Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The clear teaching of *Bracy v. Gramley* is that a petitioner in a § 2254 case is not entitled to discovery as a matter of course. The factual setting of that case is informa-

tive especially in view of its being a death penalty case.

Thus, this Court will proceed to a consideration of the merits of this case on the basis of the extensive record before it and will and does presume as correct the findings of fact of the Court of Appeals of Indiana made both in 1991 and 1996 under 28 U.S.C. § 2254(e)(1). The first opinion was authored by Judge Staton in *Boyko v. State,* 566 N.E.2d 1060 (Ind.App.1991) and the second opinion was an unpublished opinion authored by Judge Hoffman on December 16, 1996 and concurred in by Judges Staton (the author of the 1991 opinion) and Judge Najam. For purposes of immediate reference this December 16, 1996 opinion is attached hereto and incorporated herein as Appendix A. An independent examination of the record in this case and the two opinions of the Court of Appeals of Indiana leads this Court to conclude that the constitutional values that inhere in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) have not been violated.

■ The question also was raised as to prosecutorial misconduct. For example *see U.S. v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), a case emanating from this Circuit. *See also Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Attorney General of Indiana proposes to wave aside the issue with regard to prosecutorial misconduct under the concept of procedural default, but this Court chooses to do otherwise. At least under state law the Court of Appeals of Indiana, in its most recent opinion, determined that the remarks of the prosecutor in final argument did not constitute prosecutorial misconduct and were not so serious that they poisoned the entire atmosphere of the trial. *See United*

States v. Pirovolos, 844 F.2d 415 (7th Cir. 1988); see also U.S. v. Gonzalez, 933 F.2d 417 (7th Cir.1991). Consistent with Pirovolos and consistent with the factual analysis in the 1996 of the opinion of the Court of Appeals of Indiana, this Court cannot find consistent with Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) that these prosecutorial remarks did in fact poison in a constitutional way the entire atmosphere of the trial. Additionally it must be added that they are in the category of things that might have best been left unsaid.

The standards with regard to the ineffective assistance of Appellate counsel under Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) involved basically the same constitutional standards as evidenced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). This Court has failed to find under the constitution, particularly the Fourteenth Amendment and Sixth Amendment, that the record fails to disclose ineffective assistance of trial counsel. The failure of Appellate counsel to raise that issue cannot be gainsaid as ineffective as to those same issues.

■ This trial was had in Fort Wayne, Indiana ten years ago and it has been reviewed by two different panels of the Court of Appeals of Indiana with overlapping membership. Both Judges Hoffman and Staton are thirty year veterans of that Court and it must be said that they gave the claims that were presented to them careful consideration under state law and it is the burden of this Court to independently examine those issues under the Constitution of the United States particularly here the Fourteenth Amendment and the Sixth Amendment.

This case is subject to the review standards in the Anti–Terrorism and Death Penalty Act particularly under § 2254(d) under which a writ of habeas corpus shall not be granted if adjudicated on the merits in a state court unless that state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Specifically, it is the view of this Court that the two decisions of the Court of Appeals of Indiana are not contrary to and do not involve an unreasonable application of clearly established constitutional laws determined by the Supreme Court of the United States and have not resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. One may argue that that legislative decision made by the Congress of the United States in a statute that became effective April 14, 1996 is unduly limited and perhaps even a harsh one. However, it is a decision that the Congress under the concept of separation of powers has every right to make and it is the burden of the federal judiciary, even those who are philosophically at odds with the legislative values indicated, to follow the mandates of the Congress where they apply. It's the conviction of this Court that they clearly apply here.

It does not appear that this petitioner is asserting factual innocence as described in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). See also Whitlock v. Godinez, 51 F.3d 59 (7th Cir.1995); and Ford v. Ahitow, 104 F.3d 926 (7th Cir. 1997). There is a considerable wonder-

ment here notwithstanding the array of exhibits tendered by the petitioner as to how his relevant constitutional rights were infringed or impaired, let alone whether or not they show factual innocence. In regard to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Fourteenth Amendment teaching of that case has to do with the withholding of exculpatory evidence and it also needs to be read in conjunction with the more recent case, *U.S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Considering all of the documents that are presented, there is a very serious doubt as to how the basic values of *Brady* and *Agurs* have been violated even if that issue can now be raised.

It would be naive, however, to say that the efforts of this able counsel for the petitioner to basically retry the case and to bring up here issues for the first time is not appealing. Obviously the attempt to place these materials from a trial that happened a decade ago in Fort Wayne, Indiana before this Court, even in the absence of the above cited Congressional statute, should be approached very cautiously. This is true even when those materials, ex parte as most of them are, have an appeal. Others may read the mandates of 28 U.S.C. § 2254(d) more generously than this Court in this case and there's little doubt that that opportunity will be afforded. However, this Court cannot find a principal way in this case, with this record, under § 2254(d) to permit these belated additional doors to be opened. It is therefore the firm decision of this Court on the basis of the extensive record before it to **DENY** the petition for relief under 28 U.S.C. § 2254 and such is now **ORDERED.**

**IT IS SO ORDERED.**

1. *See* IND. CODE § 35–42–1–1 (1988 Ed.).

APPENDIX "A"

Appellant-petitioner Rodney Boyko appeals from the denial of post-conviction relief following his conviction for murder,[1] a felony.

The facts as found by this Court in *Boyko v. State,* 566 N.E.2d 1060 (Ind.Ct. App.1991) are as follows:

Here, the evidence most favorable to the State indicates that [Lester] Clouse and Boyko had a homosexual relationship. Boyko did not want to continue the relationship, and visited Clouse's apartment to speak with him about a statement which Clouse made to another of his acquaintances to the effect that if he could not have Boyko, nobody could. Boyko had a gun with him when he arrived at Clouse's apartment. Later he asked Clouse to take a ride with him. After Boyko began acting strangely, and before leaving the apartment, Clouse said to his roommates, 'If I'm not back by this evening you know what happened to me.'

Boyko drove Clouse to a secluded area, where he confronted Clouse with the statement. Boyko then discharged the gun, a .22 caliber semiautomatic pistol, several times into the air. Clouse grabbed the gun and the two returned to the car where he returned the pistol to Boyko. Boyko reloaded the gun and cocked it, placing a live round in the chamber. Clouse put his hand on Boyko's leg and Boyko shot Clouse in the chest.

After he shot Clouse, Boyko placed the body in the trunk of the car and attempted to enlist the help of several of his friends to dispose of the body. He also made plans to leave the state. After a high speed chase, he was apprehended by police seventeen hours after

Clouse's death with the body still in the trunk of the car.

*Id.* at 1061–62.

Based on the above, Boyko was charged with murder, a felony. In November 1989, Boyko received a jury trial, was convicted of murder, and was sentenced to thirty-five years. Boyko's conviction was affirmed in *Boyko v. State,* 566 N.E.2d 1060 (Ind.Ct.App.1991).

In October 1994, Boyko filed a petition for post-conviction relief. In his petition, Boyko alleged prosecutorial misconduct and ineffectiveness of counsel. The trial court denied Boyko's post-conviction petition without a hearing. Thereafter, Boyko filed a motion to correct error staring that the post-conviction court erred in not granting him a hearing. Boyko's motion was granted. After holding a full hearing on Boyko's post-conviction petition, the trial court denied the petition. This appeal ensued.

As restated, Boyko raises two issues for review:

(1) whether the prosecutor engaged in misconduct; and

(2) whether Boyko was denied effective assistance of counsel.

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Madden v. State,* 656 N.E.2d 524, 525 (Ind. Ct.App.1995), *trans. denied.* In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Weatherford v. State,* 619 N.E.2d 915, 916 (Ind. 1993). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads only to a conclusion opposite that of the post-conviction court. *Madden,* 656 N.E.2d at 525–526.

The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id.* at 526. If an issue was available on direct appeal but not litigated, it is waived. *Id.* An exception to the doctrine of waiver arises when errors are so blatant and serious that to ignore them would constitute a denial of fundamental due process, i.e., fundamental error. *Id.* The fundamental error doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that the error was so prejudicial to the rights of the appellant that he could not have had a fair trial. *Id.*

Boyko first contends that repeated prejudicial statements and misstatements by the prosecutor during final argument constituted prosecutorial misconduct rising to the level of reversible error. Specifically, Boyko argues that it was prejudicial for the prosecutor, during final to repeatedly characterize Clouse's death as murder, to misquote Boyko's cross-examination responses, to depict Boyko as a "cold-blooded killer," and to call Boyko a liar and mock Boyko's counsel. Boyko concedes that a contemporaneous objection to the statements is usually required to preserve error, but asserts that his failure to lodge an objection does not preclude review because the error was fundamental.

In order to obtain reversal of a conviction due to prosecutorial misconduct, a defendant must show 1) the prosecutor's actions constituted misconduct by reference to established norms of professional conduct and 2) that the ensuing prejudice placed him in a place peril to which he should not have been subjected. *Smith v. State,* 610 N.E.2d 265, 268 (Ind.Ct.App.

1993). The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of the impropriety of the conduct. *Barger v. State*, 587 N.E.2d 1304, 1310 (Ind.1992).

Boyko argues that it was prejudicial for the prosecutor, during closing argument, to characterize Clouse's death as murder. Boyko maintains that by doing so, the prosecutor summarily decided the only issue at trial: whether Boyko murdered Clouse. In support of us argument Boyko cites *Moore v. State*, 652 N.E.2d 53 (Ind. 1995) where our supreme court found prosecutorial misconduct where the prosecutor repeatedly used the word "murder" after being directed to use the word "homicide."

In final arguments it is proper for the attorneys to state and discuss the evidence and reasonable inferences derivable therefrom, so long as there is no implication of personal knowledge that is independent of the evidence. *Kappos v. State*, 577 N.E.2d 974, 977 (Ind.Ct.App.1991), *trans. denied.* Here, there was no implication that the prosecutor's use of the word "murder" arose from personal knowledge that was independent of the evidence.

At his trial, Boyko admitted that he shot Clouse at close range but stated that the shooting was an accident. However, the State introduced evidence refuting Boyko's testimony, including the testimony of a firearms expert who stated that the safety on the gun used to shoot Clouse was operational and that the gun required a force of thirteen and a quarter to fifteen pounds of force to pull the trigger.

Furthermore, Boyko never objected to the prosecutor's use of the word "murder," and the trial court never instructed the prosecutor to use a word other than murder in characterizing Clouse's death. When viewed in the context of the entire closing argument, the use of the word "murder" did not appear to place Boyko in a position of grave peril. The prosecutor was simply arguing her interpretation of the evidence, which was proper.

Boyko next argues that the prosecutor committed misconduct by misquoting Boyko's testimony. During closing argument, the prosecutor stated:

> Mr. Gevers asked Mr. Boyko on cross examination a question that I found very interesting. He asked him, 'After you murdered Lester Clouse you stuffed his body in the trunk, didn't you?' He said, 'Yes.' He didn't say, 'No, I didn't murder him.' But, 'Yes. I put his body in the trunk.' He said, 'Yes, I murdered him and I put his body in the trunk.'

Boyko maintains that he did not testify as such and that the prosecutor's misquotations prejudiced him.

The evidence discloses, however, that during Boyko's direct examination, he admitted that he placed Clouse's body into the trunk of the car after accidentally shooting Clouse. During Boyko's cross-examination, he admitted that he was present when the gun went off and that he drove Clouse's body around in the trunk for seventeen hours. Boyko also admitted that he wrote letters to a friend stating: "Yes, I did kill [Lester Clouse]." Given the testimony, it was not improper for the prosecutor to reach the inference that Boyko murdered Clouse.

In further reference to Boyko's testimony, the prosecutor later stated during final argument. "This boy tells you, 'I carry a gun like I wear a watch.'" Boyko argues that, once again, the prosecutor misquoted him and subjected him to prejudice.

At his trial, Boyko testified that he was familiar with guns and that he was carrying a 22 caliber pistol for an entire day prior to shooting Clouse. Boyko also stat-

ed on cross-examination that: "I did not remember I even had a handgun on the until [I confronted Clouse]. I had that handgun on me all that evening and all the whole day before." The prosecutor concluded from this testimony that Boyko was so familiar with handguns that he could carry one on his person and not be aware of it. The characterization was well supported by the evidence.

Boyko next argues that the prosecutor committed misconduct when, during closing argument, she referred to Boyko as cold and emotionless and depicted him as a "cold-blooded killer." Boyko contends that he appeared apathetic during his trial because he was torpid from an anti-depressant medicine he was given the night before his trial. According to Boyko, it was improper for the prosecutor to make the characterizations because, although the jury knew that Boyko had been given medicine the night before his trial, the jury was never made aware of the type of medicine Boyko was given or the affect the medicine had upon Boyko.

Here, the jury was aware that Boyko was given medication the night before the trial and that he was still torpid from the affect of the medication. The jury was also aware of the facts and circumstances surrounding Clouse's death as presented by the State, that is, that Boyko shot Clouse at close range, placed Clouse's body in the trunk of the car, and drove the body around for seventeen hours before being apprehended by police. The prosecutor's characterizations of Boyko were supported by the evidence.

Boyko next argues that the prosecutor committed misconduct by calling Boyko a liar. During final argument, the prosecutor stated: "You should not disregard the testimony of any witness without a reason and without careful consideration. With-

out a reason. He's lying. That's reason enough."

A prosecutor remains within the bounds of permissible advocacy by expressing a belief in the guilt of the accused during final argument if it is clearly stated or implied that the predicate for the belief is the evidence presented at trial. *Clark v. State*, 597 N.E.2d 4, 9 (Ind.Ct.App.1992), *trans. denied.* A prosecutor may comment upon the credibility of witnesses so long as the assertions arise from the evidence. *Id.*

Here, the prosecutor's comments were based upon the evidence. She related her final argument to legal principles and to the evidence, and asked the jurors to remain impartial and fair. Contrary to Boyko's contentions, the prosecutor's comment did not prejudice him or place him in grave peril.

Boyko also claims that is was improper for the prosecutor to mock his defense counsel by stating: "Mr. Grimm's explanation of the reckless act—that's a fairy tale. Grimm's fairy tale ladies and gentlemen. That's what it is." Boyko's defense counsel objected, arguing that the prosecutor was attempting to mislead the jury by insulting him.

It is highly improper for counsel to attempt to impinge the integrity of opposing counsel. *Splunge v. State*, 641 N.E.2d 628, 630–631 (Ind.1994). "A prosecutor's conduct in this regard is deplorable and in no sense of the word is to be condoned by this Court." *See id.* at 631 (where our supreme court found it improper for prosecutor to observe "that the defense counsel does not want the jury to know the truth"); *see also, Scherer v. State*, 563 N.E.2d 584 (Ind.1990) (where our supreme court found it improper for prosecutor to tell the jury that "someone is trying to snow you" and that "you are snowed under and you have to try to dig yourself out").

Here, as in *Splunge* and *Scherer,* the prosecutor's conduct was improper. However, in right of the evidence against Boyko, he has failed to demonstrate that he was subjected to grave peril or denied a fair trial as a result thereof.

Boyko contends, second, that the prosecutor committed misconduct by offering into evidence two weapons found in the trunk of the car Boyko was driving at the time of his arrest. Boyko specifically argues that the two weapons, a shotgun and a rifle, were irrelevant because they were not used in the shooting incident. The State counters arguing that the evidence was admissible because it was introduced to prove something other than Boyko's character or propensity to commit the charged crime, and because the trial court has wide latitude in determining the admissibility of evidence.

Boyko relies upon *Tynes v. State,* 650 N.E.2d 685 (Ind.1995), in support of his argument. In *Tynes,* weapons that were not used at the scene of the crime but found in the trunk of the car the defendant was driving at the time of his arrest, were admitted into evidence. Our supreme court concluded that it was error to admit the unrelated weapons into evidence because they did not tend to prove or disprove a material fact or shed any light on whether the defendant was guilty of murder. "The weapons were not used in the charged crime, nor were they helpful to 'complete the picture' of the crime." *Id.* at 687.

A trial court's decision regarding the admission of evidence will be accorded a great deal of deference on appeal. *Id.* In determining whether the evidence is relevant and admissible, we look to whether the evidence tends to prove or disprove a material fact in the case or sheds any light on the guilt or innocence of the accused. *Id.;* Ind. Rules of Evidence 401, 402.

Here, the evidence of the guns helped to shed light on whether Boyko was guilty of Clouse's murder. Police officers found the guns in the trunk of the car Boyko was driving at the time of his arrest. During his trial, Boyko admitted that the guns belonged to him, that he placed the guns into the trunk of the car after placing Clouse's body into the trunk, and that he planned to sell the guns to raise money to enable him to leave town. Although testimony established that the guns were not used in the shooting, they nevertheless helped to complete the picture of the crime.

Boyko next argues that both his trial counsel and his appellate counsel were ineffective. In a post-conviction relief hearing concerning competency of counsel, the petitioner has the burden of proving that counsel's representation fell below a standard of reasonableness established by prevailing professional norms. *Drake v. State,* 563 N.E.2d 1286, 1288 (Ind.1990). He must also prove that counsel's failure was so prejudicial as to deprive him of a fair trial. *Id.* It shall be strongly presumed that counsel assisted the defendant adequately and exercised reasonable professional judgment in making all significant decisions. *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995). Inexperience or isolated instances of poor tactics or strategy do not necessarily amount to ineffectiveness of counsel. *Id.* A court denies a defendant a fair trial when the conviction or sentence results from a breakdown in the adversarial process which renders the result unreliable. *Barany v. State,* 658 N.E.2d 60, 66 (Ind.1995).

Boyko alleges that his trial counsel was ineffective for failing to investigate whether Boyko was suffering from post-traumatic stress disorder at the time of the murder, for failing to consider a defense of self-defense, and for failing to object to the

various instances of prosecutorial misconduct. He raises these issues for the first time in his post-conviction relief petition.

As a general rule, ineffective assistance of trial counsel is an issue known and available at the time of direct appeal. *Wine v. State,* 637 N.E.2d 1369, 1378 (Ind. Ct.App.1994), *trans. denied.* However, because Boyko raised ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel on direct appeal in his post-conviction petition, the ineffective assistance of counsel issues have been preserved. *See id.*

Boyko first argues that his trial counsel was ineffective for failing to investigate whether he was suffering from post-traumatic stress disorder (PTSD) at the time of the shooting. During Boyko's post-conviction hearing, a clinical social worker testified that, in her opinion, Boyko was suffering from PTSD at the time of the shooting. According to the clinical social worker, the disorder was brought about by the repeated molestations of Boyko by Clouse and four other adult men.

Boyko's defense counsel also testified at the post-conviction hearing and stated that he did not view Boyko's homosexual relationships as molestations and that had he been aware of Boyko's PTSD condition, he would have asserted it as a defense; however, he did not know whether such a defense would have been effective. Based upon the testimony of the clinical social worker and Boyko's defense counsel, Boyko avers that his trial counsel was ineffective for failing to investigate whether Boyko suffered from PTSD.

Boyko testified to the alleged sexual molestations by Clouse and the four other adult men; however, Boyko also testified that he was dating Clouse. At his post-conviction hearing, Boyko testified that prior to and during his jury trial and sentencing hearing, he did not then recognize that he suffered from PTSD. Boyko further stated that he did not suggest such a theory of defense to his trial counsel.

The post-conviction court found that Boyko's trial counsel "conducted cross-examination of the State's witnesses, presented evidence on behalf of Mr. Boyko, including Mr. Boyko's own trial testimony, [and] successfully argued for and obtained from the Court a jury instruction regarding the possibility for a lesser-included offense of Reckless Homicide ...." Even if this Court were to assume, *arguendo,* that Boyko's trial counsel should have investigated the PTSD condition, we cannot say that his failure to do so deprived the jury of evidence concerning that state of Boyko's mental health at the time of the incident. Boyko's trial counsel was not ineffective.

Boyko further argues that his trial counsel was ineffective for failing to consider the defense self-defense. Self-defense requires a showing that the defendant was in real danger of death or great bodily harm, or in such apparent danger as caused him, in good faith, to fear death or great bodily harm. IND. CODE § 35–41–3–2(a); *Geralds v. State,* 647 N.E.2d 369, 373 (Ind.Ct. App.1995), *trans. denied.*

In the instant case, Boyko testified at his trial that Clouse did not threaten him at the time of the shooting. He further testified that the gun discharged accidentally. Boyko's trial counsel had the responsibility of making the choice as to the best defense to present on Boyko's behalf and chose not to present the defense of self-defense. In a situation of this sort, one can always hypothesize that had Boyko's trial counsel taken a different approach to Boyko's defense it might have been more successful. Boyko's trial counsel rendered adequate legal assistance.

Boyko also maintains that his trial counsel was ineffective for failing to object to

the various instances of prosecutorial misconduct previously set forth in this opinion. To prevail on such a claim, Boyko must demonstrate that a proper objection would have been sustained, *Barany,* 658 N.E.2d at 66, and such was prejudicial to the defendant. This argument has been previously considered in this opinion and decided adversely to Boyko.

Boyko's final argument is that his appellate counsel was ineffective because, like trial counsel he failed to raise the issues ultimately raised in Boyko's petition for post-conviction relief. Appellate review of the effectiveness of appellate counsel's representation uses the same standard as is applied to trial counsel. *Kappos,* 577 N.E.2d at 978. Having found no reversible errors as to the issues raised, appellate counsel was not ineffective.

Affirmed.

STATON, J., and NAJAM, J., concur.